## AMERICAN CENTRAL INSURANCE COMPANY *v.* LEVIN ANTRAM ET AL.

1. INSURANCE. *Validity of policy. Fraud. Waiver.*

   All contracts, including insurance policies, the execution of which has been obtained by fraudulent representations, are absolutely void, and cannot be the subject of waiver.

2. SAME. *Knowledge of adjuster.*

   A recovery on an insurance policy, void because its execution was obtained by fraudulent representations, cannot be predicated of the fact that the local agent accepted a premium for the company after its adjuster had investigated the fire and loss and had full knowledge of all the facts touching the same, in the absence of proof that the adjuster had knowledge of the fraudulent representations when he made the investigation.

3. SAME.

   The fact that the adjuster at the time of the inspection was fully advised as to the true state of the title to the house insured and of the assured's interest therein is insufficient to show that he knew that the policy had been procured by fraudulent representations.

4. SAME. *Private debt to agent.*

   Where an insurance agent has remitted a premium to the company with his monthly remittance, his subsequent acceptance of the amount of the premium from the assured as in payment of a private debt due to him as an individual does not constitute a waiver on the part of the company of the assured's fraud in obtaining the policy, though at the time both the agent and the company's adjuster had full knowledge of all the facts surrounding the fire and the representations by which the policy was procured.

5. SAME. *Builder's risk. Valued policy law. Laws 1902, sec. 33, ch. 59, p. 75.*

   A builder's risk insurance policy for more than the builder's interest in the building is governed by the valued policy law.

FROM the circuit court of Yazoo county.

HON. DAVID M. MILLER, Judge.

Antram and others, appellees, were plaintiffs in the court below; the insurance company, appellant, was defendant there. From a judgment in plaintiffs' favor the defendant appealed to the supreme court.

The school trustees of the town of Flora, Mississippi, owned a school building, and contracted with appellee, Antram, to make some alterations and repairs thereon, for which they agreed to pay him $1,232. On February 18, 1904, while Antram was engaged in doing this work, he took out a builder's risk insurance policy with the appellant company for $1,800, for which he agreed to pay a premium of $5.40. The contract was to continue in force for thirty days. On March 2, 1904, the school building was destroyed by fire, of which the insurance company was at once notified. On the 12th of April, 1904, Antram assigned in writing to the trustees of the school an undivided four-ninths interest in the insurance policy, and on the 14th day of April proof of loss was made, and soon thereafter appellant sent its adjuster to Flora, who offered to pay the full amount of the contract price to Antram—to wit, $1,232 —which was refused. Antram and the school trustees jointly brought this suit on the policy to recover the full amount of the policy, $1,800. Defendant pleaded the general issue, and other pleas setting up false and fraudulent representations made by plaintiff, Antram, to procure the policy.

*Williamson & Wells,* for appellant.

Does the valued policy law of the state control a policy issued upon a builder's risk, so that an insurer shall not be permitted to deny that the property insured was worth, at the time of issuing the policy, the full value upon which the insurance was calculated? And in case of total loss, is the measure of damages· to be the amount for which the property was insured, or is not a "builder's risk" strictly a contract of indemnity under which the assured can recover "only the actual value of the property at the time of the loss?" Would not a builder's

risk, such as the policy involved in this case covers, fall, by analogy, in that class of personal property where there is constantly a change in specifics, quantity, and value in the usual course of the construction of a building, if not "in the usual course of trade?"

What is insured by a policy upon a builder's risk? It is not the finished building, as in an ordinary policy, where the value of the building can be known and fixed by the parties at the time of issuing the policy. A builder's risk in the majority of instances is taken out when there is a vacant lot with no building on it at all. The policy covers the interest of the contractor in the building to be built, and insures against loss to the contractor, by fire, for the material furnished, the labor performed, and the profits in the contract.

Suppose the contract price for the building when complete is $5,000, and a policy is taken out by the builder to protect himself against loss by fire during the construction, the contract stipulating that the company "insures against direct loss or damage by fire, to an amount not to exceed $5,000, on a house, including building materials therein or on adjacent premises, now in course of construction," and the builder puts upon the premises $500 worth of material and begins work— a fire occurs and destroys totally all the material on the ground. Surely the measure of damages in that case would not be $5,000. Could the damage in that case be possibly more than the $500 of materials destroyed, the cost of the labor expended upon it increased, possibly, by the profits the contractor might have realized on that amount of material and labor under his contract? Such a case does not fall within the purview or meaning of the statute; it does not come within the intent or purpose of the legislature when it declared in sec. 33, ch. 59, Acts 1902, "No insurance company shall knowingly issue any fire insurance policy upon property within this state for an amount which, together with any existing insurance thereon, exceeds the fair value of the property; . . . but in suits brought

upon policies of insurance against loss by fire the insurer shall not be permitted to deny that the property insured was worth at the time of issuing the policy the full value upon which the insurance was calculated." "In case of total loss of the property insured, the measure of damages shall be the amount for which the property was insured."

Here the legislature is dealing with property, real and personal, in existence at the time the contract is made, with its full value fixed and that may be estimated and agreed on by the parties to the contract; but it is not dealing with property, real or personal, which, at the time the contract is made, has not its full or fixed value, that can be estimated and agreed on by the parties, and is to have, as the parties know in making the contract, a constantly shifting, changing value, and is to change in specifics and quantity.

In contracting, as to builder's risk, the parties know full well that the interest of the contractor in the property insured is not worth at the time of issuing the policy the amount upon which insurance is calculated, but it is to increase in value as each plank or shingle is attached by driving a nail, and when completed the building will be worth the sum named in the policy.

There is a constant changing, an ever increasing in the size and value of the house, and the property is constantly changing specifics by converting brick, mortar, lumber, nails, hardware, and other materials (which are the personal property of the contractor and insured by the policy) into completed buildings, which at once become the property of the owner, and the interest of the contractor therein is converted by the statute into a lien on the building and lot for the contract price, and that is the full extent of his insurable interest in the structure.

The third instruction for plaintiffs is vicious for two reasons: It cuts off from the consideration of the jury evidence as to the actual amount of plaintiff's loss by the fire and announces the unsound proposition that the acceptance of the premium

by the local agent, after investigation of the fire and loss by the adjuster, excuses the false and fraudulent representations of plaintiff in obtaining the contract.

If the contract was obtained by fraud, it was void *ab initio;* besides, there is no proof that the adjuster ever heard or knew of the fraud and misrepresentations of Antram before the premium was paid, and the local agent at the time he accepted the premium had paid it to the company and collected it as an individual debt between himself and Antram, whom he, and not the company, credited, and the local agent did not know at the time of accepting the premium that Antram had misrepresented his interest in the building. The adjuster did not then know of any misrepresentations made by Antram in obtaining the policy and did not deny liability, but, on the contrary, offered to pay $1,232, the contract price, saying to Antram that was all he had lost or was entitled to.

*E. R. Holmes; Harris, Powell & Harris;* and *W. J. Croom,* for appellees.

[The brief of counsel for the appellees was withdrawn or lost from the record before it reached the reporter.]

TRULY, J., delivered the opinion of the court.

The third instruction for the appellees is as follows: "The court further instructs the jury that even though they may believe from the evidence that Antram made false statements, and by such false statements secured the policy in this case, and that the same would not have been issued without such false statements, they will still find for the plaintiff if they further believe from the evidence that after the fire the defendant's local agent, Eggleston, accepted the premium for the company after its adjuster, Dillingham, had investigated the fire and loss and had full knowledge of all the facts in the case." Under the facts disclosed by this record, the granting of this instruction was fatal error. If the assured made false state-

ments to the agent of appellant, and thereby secured the issuance of a policy which, had the truth been stated, would not have been issued, the contract of assurance was never entered into, being absolutely vitiated by the fraud. If the insurance policy was obtained by fraud, no contract between the parties ever existed. Contracts of assurance are governed in this regard by the same general legal principle applicable to other contracts. The cases cited and relied upon by appellees as sustaining the proposition that the acceptance of the premium after knowledge of the facts constitutes a waiver of all defenses are all predicated of the existence of a legal contract between the parties, and simply hold that the insurance company, by accepting and retaining the premium after knowledge, waives the benefit of such defects, and they cannot be availed of in an attempt to avoid the policy. But the rule has no application to the state of facts set forth in the instruction now under review, for the reason that, if the policy was in truth procured by fraudulent representations, the contract of assurance apparently set forth therein is not merely voidable, but is legally nonexistent. A second objection to the instruction is that the record is barren of any proof tending to show that the adjuster of the insurance company, at the time he made the inspection of the loss, had any knowledge of the alleged false and fraudulent representations by which it is contended Antram procured the issuance of the policy. It is true that the adjuster, according to Antram's testimony, was at that time fully advised as to the true state of the title to the house which was destroyed and of the interest which Antram owned therein. But this falls far short of proof that the adjuster was advised that the policy had been procured by false representations, fraudulently made, and it is upon this ground that appellant mainly relies. In the nature of things it was improbable that the inspector should have been so advised, for the all-sufficient reason that Antram, from whom he obtained all his information, emphat-

ically denies that he ever made such false statements to the agent of the company.

Another error in the instruction is that it ignores the direct and positive statement of the agent of the company that he did not receive the premium on the policy for the company after the adjuster had investigated the fire. There is nothing in the record as now presented to cast doubt upon the truth of the statement made by the agent that he had previously remitted to the company the premium due on the policy with his monthly remittances, and that at the date of the acceptance by him of the premium it was received in liquidation of an individual indebtedness due by Antram to him personally. If this be true, the acceptance by the agent of the payment of a private indebtedness due to him as an individual could not, by operation of law or by force of any adjudication of this court, constitute a waiver on the part of the company, even conceding that at the time of such payment both the adjuster and the agent had full knowledge of all the facts of the case and of all the circumstances surrounding the fire and the representations by which the issuance of the policy was procured. Such a doctrine would be to place a premium on fraud, and to encourage unscrupulous persons to procure by corrupt practices the issuance of policies, and then, should loss occur before their fraud became known, to protect themselves by inducing the agent then to accept the premium. We in no wise purpose to vary or abridge the rule that any and all defects known to exist in a contract of insurance by which a policy may be avoided will be waived by the acceptance by the company, through its agents, of the premium after full knowledge of the defects; but, while we do not modify that rule, neither will we extend it so as to enforce payment of policies of insurance procured by false representations as to material matters, made with fraudulent intent.

We are deeply impressed by the force of the argument made by counsel for appellant as to the opportunity presented for

fraud in cases where a builder's risk is concerned and where the contractor procures a policy of insurance for more than his interest in the building, but nevertheless we are constrained by the language of the statute to hold that such policy is governed by our valued policy law, and we must perforce remit the alleged evil and the remedy therefor, if one be found necessary, to the legislative department of the government.

*For the error indicated in granting the third instruction for the appellees, the cause is reversed and remanded.*