JOHN H. KING v. PHOENIX INSURANCE COMPANY OF BROOKLYN, NEW YORK, Appellant.

Division One, March 30, 1906.

1. INSURANCE: Oral Contract. An oral contract of insurance is valid.

2. ———: ———: Statute: Agent. The statute (sec. 974, R. S. 1899) expressly provides that parol contracts may be binding upon aggregate corporations if made by an agent authorized to contract, and contracts may be implied on the part of such corporations from their corporate acts, or those of an agent whose powers are of a general character. And where the agent of an insurance company, entrusted with blank policies, signed

by the president and secretary, with authority to negotiate, fill up and issue the same, agrees to issue a policy for a certain amount, on a definite building, for an agreed premium, the insured can recover the amount of the insurance in case of loss by fire within the agreed life of the contract, although the policy was never delivered or issued, and although the premium agreed to be paid when called for was not tendered until after the fire.

3. ———: ———: **Impairment of Obligation of Contract.** To hold that an oral contract of insurance is valid, and that an agent can make such a contract that will be binding on the company, although under his written appointment he had no power to enter into an oral contract of insurance, is not to deny to the company the rights guaranteed to it by the Federal Constitution prohibiting a State to pass a law impairing the obligation of contracts. That constitutional clause has reference to the legislative powers of the State, and not to the decisions of its courts.

4. ———: ———: **Revenue Stamp.** An oral contract of insurance made in February, 1901, was not invalid simply because a revenue stamp which the United States statute required to be affixed to every contract, could not be attached thereto. That statute did not prohibit the making of oral contracts, nor make invalid written contracts, but simply made it a misdemeanor to fail to stamp such instruments and made them inadmissible in evidence, but it made them inadmissible only in Federal courts.

5. ———: **Builder's Policy: Ownership of Property.** The plaintiff, a contractor, was building a church under a contract by which he was to have the materials of the old building and receive $675 cash, and had received all but $108 due him, and had the property insured, under a builder's policy, for $750. If the building burned plaintiff was required to rebuild it, and would be entitled to no further payments than were provided for by the original contract. *Held*, that he had an insurable interest in the building, and an instruction which spoke of the building as "the property of the plaintiff" was not erroneous.

6. ———: ———: **Valued Policy.** A builder who holds a builder's policy on a building which he is constructing for another is entitled to the benefit of the valued policy law of Missouri. The building is a part of the realty, whether he owns the ground on which it stands or not; it is not personalty.

Appeal from Lincoln Circuit Court.— *Hon. H. W. Johnson,* Judge.

AFFIRMED.

*Norton, Avery & Young* and *Barclay, Shields & Fauntleroy* for appellant.

(1)   Plaintiff put in evidence a written contract between defendant and Pace, which fixed and defined the powers of the latter as agent.   It did not authorize Pace, as agent for defendant, to make a verbal agreement for insurance.   Hence, the alleged agreement, sued upon, was without authority and not binding on defendant.   It was error not to instruct for a verdict for defendant on the admitted facts.   Trask v. Ins. Co., 53 Mo. App. 625; Embree v. Ins. Co., 62 Mo. App. 132. Where an agent's authority is in writing (and is not ostensibly or apparently made larger, by any representation, name or title given him by his principal, of which there is no suggestion or hint or claim in this case) the written powers conferred by the writing are the only powers the agent may exercise so as to bind his principal.   Bank v. Schaumberg, 38 Mo. 228; Ashley v. Bird, 1 Mo. 640.   The expression of definite powers given to the agent excludes any other powers not expressed.   Baring v. Peirce, 5 W. & S. 548 (40 Am. Dec. 534); Tate v. Evans, 7 Mo. 420; Wheeler v. Givan, 65 Mo. 89; Ashley v. Bird, 1 Mo. 640; State v. Bank, 45 Mo. 538; Hickman v. Green, 123 Mo. 174. (2)   The written contract of agency between defendant and Pace fixed the limits of the latter's powers as agent for defendant, according to the law of Missouri as expounded and construed by the highest court of Missouri in Bank v. Schaumberg, 38 Mo. 228.   No judicial, legislative or executive authority of Missouri (under the Federal Constitution, art. 1, sec. 10, which was expressly invoked on this point by defendant at the trial) has power to impair the obligation of that contract of agency (by enlarging its terms by construction and departing from the rule declared in Bank v. Schaumberg) so as to impose a greater liability on defendant than

said contract of defendant authorized under the decision in Bank v. Schaumberg, aforesaid. Taylor v. Ypsilanti, 105 U. S. 60; Olcott v. Supervisors, 16 Wall. 678. (3) Under the United States revenue law, concerning stamps (30 U. S. Stat. at L. p. 448, and following, secs. 6, 7 and schedule A, sec. 20), contracts of insurance could not be made orally, in the year 1901, because the Federal law required a stamp upon every such contract of insurance. A stamp cannot be placed upon an oral contract of insurance against fire. The United States Constitution and the statutes enacted in pursuance thereof, called the revenue law, are paramount authority. U. S. Const., art. 6. They control the State law on the subject of insurance, so far as concerns that part of the Federal law which relates to the laying of taxes, in the form of adhesive stamps required to be affixed to insurance contracts. The Federal law provides a method of collecting Federal revenue for the United States. The State law must yield, if necessary, to the Federal law upon that subject. The United States statute requiring revenue stamps on policies of insurance against fire could easily be evaded and set at naught if verbal contracts of insurance could be made without being stamped. Only when stamped are such contracts admissible in evidence. Chartiers Co. v. McNamara, 72 Pa. St. 278; Plessinger v. Dupuy, 25 Ind. 419; Hugus v. Strickler, 19 Iowa 416. The fact that a stamp is required, necessarily and by the clearest implication, forbids the making of an oral agreement for insurance such as plaintiff sets up in this case, which is in conflict with the stamp act of the United States Government in force in 1901, when the alleged verbal contract of insurance in this case was made. Morgan v. Mather, 2 Ves. Jr. 18; Ins. Co. v. Duffy, 2 Kan. 355. (4) Under the various statutes of Missouri concerning insurance, it is obvious that a verbal contract of insurance is not contemplated or sanctioned by our law

on the subject of insurance. The way in which the words "policy" and "policies" appear, in the acts regulating all phases of insurance, demonstrates that a contract of insurance is intended to be made by some form of writing. The Missouri statutes on this point are totally inconsistent with the idea that a verbal contract of insurance is authorized by our Missouri law. R. S. 1899, secs. 7970, 7971, 7973, 7974, 7975, 7979; Laws 1903, p. 209, sec. 7972. The Missouri statute requiring a "uniform form of policy" for use by all fire insurance companies in this State, implies that verbal insurance is thereby forbidden as much as if so declared expressly. R. S. 1899, sec. 7979. (5) A "builder's risk" (the term used in plaintiff's last policy to describe the nature of the insurance) is a well-known term in the law of this subject. It is an indemnity to protect the interest which a builder has in the structure he is erecting. It does not reach beyond his own interest at the time of the fire. The trial court's ruling to the contrary was error, both in the admission and exclusion of testimony, and in the giving of instructions for plaintiff numbered 1 and 2. Ins. Co. v. Winsmore, 124 Pa. St. 61; Ins. Co. v. Stinson, 103 U. S. 25. (6)    An oral agreement of insurance in Missouri (if valid at all) cannot properly be treated (as it was in this case by the second instruction for plaintiff) as a statutory valued policy under our insurance law, for it does not come within the terms of that law. R. S. 1899, sec. 7969. (7) Plaintiff was admitted to have no interest in the land, and the building was attached permanently thereto, so that whatever interest plaintiff had in the church was, in its nature, personalty, and it was not real property. The valued policy law of Missouri does not apply to personal property, but only to realty, that is, to such buildings as form part of the realty. R. S. 1899, sec. 7969; Trask v. Ins. Co., 53 Mo. App. 625.

*E. B. Woolfolk* and *W. A. Dudley* for respondent.

(1) Defendant's agent Pace had the lawful right under the terms of his commission to bind the defendant in the parol contract for insurance. King v. Ins. Co., 101 Mo. App. 163; Richards on Insurance, sec. 140; Ostrander on Insurance, secs. 13 and 14; I Joyce on Insurance, sec. 525; 1 May on Insurance, sec. 23 d; Lingfelter v. Ins. Co., 19 Mo. App. 252; Vining v. Ins. Co., 89 Mo. App. 311; Channey v. Ins. Co., 62 Mo. App. 45; Duff v. Ins. Co., 56 Mo. App. 355; Eames v. Ins. Co., 94 U. S. 621; Philadelphia Fire Ass'n v. Smith, 59 Ill. App. 655; Brown v. Ins. Co., 165 Mass. 565; Post v. Ins. Co., 43 Barb. 351; Angell v. Ins. Co., 59 N. Y. 171; Home Ins. Co. v. Adler, 71 Ala. 516; Ellis v. Ins. Co., 50 N. Y. 402; Bailie v. Ins. Co., 73 Mo. 371; Relief Fire Ins. Co. v. Shaw, 94 U. S. 574; Newark Machine Co. v. Ins. Co., 22 L. R. A. 770. It was impossible to affix internal revenue stamps to a policy that never was written because of the failure and neglect of defendant's agent to issue the policy in conformity to the terms of its parol contract with plaintiff for the insurance on his building. If the internal revenue stamps had been omitted from the written and executed policy, had defendant complied with its parol contract to issue the policy, the effect of such omission would in nowise impair the validity of the policy; generally, the provisions of the United States internal revenue laws (including the recent stamp act) have to do with the administration of the law in Federal or United States courts, and do not apply to the State courts. Knox v. Rossi, 48 L. R. A. 305; Carpenter v. Snelling, 97 Mass. 452; Griffin v. Ranney, 35 Conn. 239; Craig v. Dimock, 47 Ill. 308; Express Co. v. Haines, 48 Ill. 248; Twitchell v. Pennsylvania, 7 Wall. 321; Livingston v. Moore, 7 Pet. 482. In the absence of fraudulent intent to evade the provisions of the law, failure to stamp an instrument requiring a stamp does not render it invalid, or

inadmissible as evidence in any jurisdiction. Hooper v. Whitaker, 130 Ala. 324; Latham v. Smith, 45 Ill. 29; Smith v. Nelson, 18 Vt. 511; Wilson v. Carey, 40 Vt. 179; Garland v. Gaines, 73 Conn. 662; Small v. Slocum, 112 Ga. 279; Wade v. Fuss, 96 Me. 230; Spoon v. Frumback, 83 Minn. 301. The failure of defendant to issue the policy of insurance against fire and.lighting to plaintiff, with the internal revenue stamps affixed thereto, as the Federal statute provided at the time, will not operate to impair the obligations of the parol contract made by defendant through its duly authorized agent; with plaintiff, insuring the risk in question. Small v. Slocum, 112 Ga. 279, 53 L. R. A. 130; Clemens v. Conrad, 19 Mich. 179; Sammons v. Halloway, 21 Mich. 162. The exercise by a court of its legitimate powers of trying cases and construing contracts in issue before it, is not a matter within the provisions of section 10 of article 1, United States Constitution, prohibiting the "passing of a law" impairing the obligations of contracts. Storrie v. Cortes (Tex.), 38 S. W. 154; Railroad v. McClure, 10 Wall. 511; New Orleans Water Works v. Sugar Refining Co., 125 U. S. 18. (2) All the instructions complained of met the approval of the Court of Appeals in this case (101 Mo. App. 163), and are correct. The whole loss fell on plaintiff. Haynes v. Baptist Church, 88 Mo. 285; Stottlemeyer v. Bobb, 7 Mo. App. 578; 9 Cyc. 627, par. 5, note 67. Plaintiff's interest was properly declared. Key v. Ins. Co., 101 Mo. App. 344; 1 May on Ins. (3 Ed.), sec. 95. (3) Oral testimony is primary evidence of agency in these cases, and is as competent as written evidence, when the statute does not expressly require written evidence. R. S. 1899, sec. 974; Lungstrass v. Ins. Co., 57 Mo. 107; Brickenridge v. Ins. Co., 87 Mo. 62; Burdick v. Ins. Co., 77 Mo. App. 629; Rosenbaum v. Gilliam, 101 Mo. App. 134; Green v. Worman, 83 Mo. App. 568; Franklin v. Ins. Co., 52 Mo. 461; McGinniss v. Mitchell, 21 Mo. App. 493; Mosby v. Commission Co., 91 Mo. App. 500;

Murphy v. Ins. Co., 83 Mo. App. 481; Mechem on Agency, sec. 301. Plaintiff was a stranger to the contract between defendant and its agent and not bound by it under the evidence. Mechem on Agency, sec. 282.

MARSHALL, J.—This is an action to recover $750 for the loss of a frame building in Elsberry, Lincoln county, Missouri, that was in process of construction, or reconstruction, for church purposes. The plaintiff recovered a judgment for $748, and after proper steps, the defendant appealed. This is the second judgment in favor of the plaintiff, and the second appeal by the defendant. The former appeal was to the St. Louis Court of Appeals. [King v. Insurance Co., 101 Mo. App. 163.]

The petition, after alleging the character of the defendant, states that on the 7th of February, 1901, John W. Pace was the defendant's local agent at Elsberry, and was duly authorized and empowered as such agent, "to receive applications, to take risks and insure and make out and deliver policies of insurance on property, for defendant, against loss or damage by fire, and to collect and receive premiums therefor; that on the 7th day of February, 1901, plaintiff applied to said John W. Pace, agent for defendant, for insurance against loss or damage by fire, upon a one-story frame, shingle-roof building and its foundations, to be occupied as a church when completed, and situated in survey 1724, township 50, range 2 east, in Lincoln county, Missouri, then and until the happening of the loss hereafter mentioned, the property of the plaintiff; that said defendant, on said date, by its agent, agreed and contracted to insure said property for a term of ten days from said date, in the amount of $750, at a premium of two dollars, to be thereafter paid to defendant by plaintiff in a reasonable time, which sum the plaintiff then and there agreed and became liable to pay defendant, and it was then and there agreed in pursuance to said

contract of insurance so made and entered into, and in consideration of the liability so assumed, by plaintiff, to pay the premium aforesaid, that defendant would issue and deliver to plaintiff an insurance policy binding said defendant to pay plaintiff all such loss or damages, as plaintiff might sustain by reason of injuries to or the destruction of the property above described, by fire, within said term of ten days, to the amount of $750.''

The petition then alleges the destruction of the building by fire, on the 9th of February, 1901; the attempt to make proof of loss and the tender of the premium on the 12th of February, 1901, together with an averment that the plaintiff had performed all of the conditions of the contract, on his part to be performed. The answer is a general denial.

The case made is this:

The plaintiff is a contractor and was engaged in the construction or reconstruction of a building for church purposes, under a contract and specifications, which required him to build and complete a church building in accordance with the plans and specifications, and subject to the approval and acceptance of the church committee; and in consideration therefor he was to receive the materials in the old building on the premises, valued at four hundred to four hundred and eighty dollars, and six hundred and seventy-five dollars cash. The plaintiff had given a bond for $1,000 for the performance of his contract. While so engaged in the work, the plaintiff, on the 9th of February, applied for and received from the defendant a policy of insurance on the building for $750, for a term of sixty days from its date, to-wit, until the 7th of January, 1901. On the 7th of January, 1901, and before the expiration of the policy, the plaintiff procured from defendant another policy for like amount, insuring the building for a further term of thirty days from the 7th of January, and to expire at noon on the 7th of February, 1901.

This policy contained the following provision: "$750 on the one-story, frame, shingle-roof building and its foundation to be occupied as a church when completed (builder's risk) and situated in survey 1724, township 51, range 2 east, Lincoln county, Missouri."

The plaintiff paid the premiums required by the defendant for said policies, to-wit, $4.50 for the first policy, and $3 for the second. All of the plaintiff's dealings were had with John W. Pace, the defendant's agent at Elsberry. Pace was acting under a written commission or appointment as agent of the defendant, which recited the appointment of Pace, as agent, "with full power to receive proposals for insurance against loss and damage by fire, in Elsberry, Missouri, and vicinity, to fix rates of premiums, to receive moneys, and to countersign, issue, renew and consent to the transfer of policies of insurance signed by the president and the secretary of the said Phoenix Insurance Company, subject to the rules and regulations of the said company, and to such instructions as may from time to time be given by its officers." No rules or regulations or instructions were introduced in evidence in this case. On February 7th, before 12 o'clock noon, and before the expiration of the second policy, the plaintiff notified Pace that he had been unable to complete the building at that time, and applied to him for insurance on the building for a like amount, and on the same terms as the last policy. Pace asked him how long he wanted the insurance to run. The plaintiff replied that he would like to have it for five or six days, and asked Pace what limit of time he could write a policy for, saying that he did not care to carry the policy any further than was necessary for him to complete the building. Pace replied that he could write a policy for as short a time as five days. The plaintiff replied that he could not get the building done in five days. Thereupon Pace said he would write a policy for ten days and charge $2.25 premium therefor. Plaintiff objected to the rate of

premium, with the result that Pace agreed to charge only $2 premium. The plaintiff accepted the proposition and said to Pace, ''Don't fail to have this policy at 12 o'clock.'' Pace replied that when he told a man anything he could depend on it. Nothing was said about the payment of the $2 premium. Prior to that time plaintiff had not been required to pay the preium on the two other policies at the time he applied for them, or when they were issued, but had paid them thereafter, Pace saying that it did not make any difference about paying the money at the time, but that it could be paid at ''any time in the run of the policy, so I can make my report, will do.'' On this understanding the plaintiff left and heard nothing more about the matter until after the 9th of February, when the fire occurred. The second policy, which expired on the 7th of February, had never been delivered to the plaintiff but had remained in Pace's hands.

The defendant objected to all the testimony relating to the insurance for ten days last aforesaid, on the ground, first, that the stamp act of the United States, then in force, required a United States revenue stamp to be fixed on all policies of insurance, and that under article 6 of the Federal Constitution the effect of the Constitution and revenue laws of the United States is to require every fire insurance risk and contract to be expressed in the form of policies and in writing; second, because insurance contracts, under the laws of Missouri, must be in writing; third, because, under the terms of the commission of appointment, Pace had no power to make any oral contract of insurance, and that it would impair the obligation of said contract between Pace and the defendant if the courts of Missouri should bind defendant by the oral contract, and that such a declaration of law by the courts of Missouri would violate article 1, section 10, of the Federal Constitution, which prohibits any State to pass any law impairing the obligation of contracts.

The court overruled the objection, and defendant now assigns that ruling as the principal error in the case.

The defendant also offered testimony tending to prove that the amount of the plaintiff's interest in the building at the time the fire occurred was only $108. On the objection of the plaintiff the court excluded the evidence, and this is assigned as error. Error is also assigned as to certain instructions given for the plaintiff, which will be noticed in the course of the opinion.

## I.

The first question that is presented for adjudication in this case is whether or not an oral contract of insurance is valid.

This question first came before this court in Henning v. Insurance Co., 47 Mo. 425. WAGNER, J., delivering the opinion of the court, held that "at common law there is nothing absolutely requiring that the contract should be in writing." After stating that there was much disagreement in the books as to the power of insurance companies to make contracts of insurance by parol, and after reviewing a number of cases bearing on the subject, and saying that the court would be strongly inclined to follow the rule laid down in most of the cases cited which held that a parol contract of insurance was good, the learned judge then quoted from the act incorporating the defendant company, which declared that "all the conditions of policies issued by said company shall be printed or written on the face thereof," and that authority had been given the company to make by-laws, one of which required the president to sign all policies or contracts by which the company was to be bound, and another required every proposal for insurance to be by written application, signed by the applicant or his agent, and concluded, that, by virtue of the act of incorporation, and the by-laws referred to, "there could be no original and binding contract by parol," as to the defendant company.

The question came again before this court in Baile
v. Insurance Co., 73 Mo. 371. That was a suit in equity
to enforce a verbal agreement to issue a policy of insur-
ance. The defense was that the defendant could only
be liable for a written or printed policy, signed by the
president and attested by the secretary, and that no
verbal contract of insurance was binding on the defend-
ant under its charter, and the laws of this State. The
court said:

"The validity of the contract is the first point de-
manding attention. The charter of the defendant com-
pany is that furnished by the general laws. [Chap. 67,
Gen. St. 1865, p. 353.] The concluding words of sec-
tion 1 of that chapter require that the 'conditions of
all policies issued by such company shall be written or
printed on the face thereof;' and section 8 of the same
chapter provides that 'all policies and contracts of in-
surance and instruments of guaranty, made by said
company, shall be subscribed by the president, or pres-
ident *pro tempore,* and attested by the secretary.'
Similar language to that just quoted was passed upon
by this court in Henning v. U. S. Ins. Co., 47 Mo. 425,
and it was held that with such a charter and by-laws,
the company could make no original and binding oral
contract of insurance. In that case, however, section 6
of chapter 62, General Statutes 1865, was overlooked.
That section, which has been on the statute books for
over thirty-five years (Stat. 1845, p. 232, sec. 8) pro-
vides that: 'Parol contracts may be binding on aggre-
gate corporations, if made by an agent, duly authorized
by a corporate vote, or under the general regulations of
the corporation, and contracts may be implied on the
part of such corporations, from their corporate acts,
or those of an agent whose powers are of a general
character.'[That section is now sec. 974, R. S. 1899.]
Passing upon the effect of this section it was held in the
circuit court of the United States for the Eastern Dis-
trict of Missouri, in an action between the foremention-

ed parties, that, construed in the light of the general law, the charter of the insurance company did not disable it from making a binding contract of insurance without writing. [Henning v. U. S. Ins. Co., 2 Dillon C. C. 26.]

"This view is certainly the better one, even where there is no such general provision as that above quoted, making oral contracts of aggregate corporations valid. It must now be considered as the well-settled doctrine by the nearly universal concurrence of the authorities that oral agreements of insurance are enforcible, although the charter of the company contains similar provisions to those contained in chapter 67, supra. The principle underlying these doctrines is this: That the right to make contracts of insurance, like any other right of contracting, exists as at common law, unless prohibited by statute; that the contract of insurance having its origin in mercantile law and usage, the distinction which denies the power to enter into such a contract, except in particular modes and forms, is without foundation and repugnant to, and inconsistent with, that general capacity of contracting which the common law concedes to every person ordinarily competent to enter into binding engagements; that the provisions of a charter of a company that they shall have the right to make contracts of insurance by the signature of a president, etc., are regarded by the courts as merely enabling and not restrictive of the general power to effect contracts in any other mode not unlawful, dictated by convenience; and that 'the distinction between a contract to insure or to issue a policy of insurance, and the policy itself, is obvious and constantly recognized by the courts.' [May on Ins., secs. 14, 22, 23, 128; Kelly v. Commonwealth Ins. Co., 10 Bosw. 82; Sanborn v. Firemen's Ins. Co., 16 Gray 448; Trustees v. Brooklyn Fire Ins. Co., 19 N. Y. 305; Relief Fire Ins. Co. v. Shaw, 94 U. S. 574; New England, etc., v. Robinson, 25 Ind. 536; 56 Mo. 371; Henning v. Ins. Co., supra.]

"In view, however, of the broad statutory provisions heretofore cited, relating to the power of aggregate corporations to contract orally, all difficulty as to the power to make, in the present circumstances, an oral contract of insurance, vanishes. Besides this, section 8, supra, requiring the signature of the president, etc., uses no prohibitory words; relates not to agreements to insure, but only to policies when completed and ready for official signature. It is unnecessary to the proper determination of this case that the one already cited from our own reports, and greatly relied on by defendant, be overruled; but it is not unworthy of remark, that the utterances in that case were, for the most part, almost, if not altogether, *obiter*, since therein it is distinctly asserted that the contract in that instance was 'nothing but a naked verbal agreement . . . sued upon. This is denied, and there is no proof of it.' So that that case could have been very briefly disposed of, as having no evidential foundation requiring either judicial discussion or determination. Be that as it may, the doctrine announced in that case does not dominate this one, for the reason that that case was a suit at law on an alleged oral and completed agreement; this is a proceeding in equity to compel that to be done which already upon sufficient consideration had been agreed should be done. And the case under discussion expressly recognizes the principle announced in Commercial Ins. Co. v. Union Mutual Ins. Co., 19 How. 319, as well as in numerous other cases cited by plaintiffs, that equity will specifically enforce 'agreements to make insurance.' "

Baile v. Ins. Co., supra, has since been cited and approved, and the doctrine announced that, unless prohibited by statute, a corporation has all the rights of contracting, under the common law, that an individual has. [Liebke v. Knapp, 79 Mo. l. c. 24; Railroad v. Railroad, 135 Mo. l. c. 200; State ex inf. v. Lincoln Trust Co., 144 Mo. l. c. 592.] In the case last cited it

was said: ''Corporations, when they are not restrain-
ed in any particular manner by their charters, may
adopt all reasonable means in the execution of their
business which a natural person may adopt in the ex-
ercise of similar powers.''

The same doctrine was taken as settled law in this
State in Duff v. Fire Assn., 129 Mo. 460.

Thus it will appear that the rule laid down in the
Henning case, supra, has not been followed in this
State since, but that, as pointed out in the Baile case,
the statutes of this State (now sec. 974, R. S. 1899)
expressly provide that parol contracts may be binding
upon aggregate corporations if made by an agent
authorized to contract, and contracts may be implied
on the part of such corporations from their corporate
acts, or those of an agent whose powers are of a general
character. In fact while the Henning case was not ex-
pressly overruled in the Baile case, because it was not
essential to the decision of that case that it should be
overruled, nevertheless, it was distinctly pointed out
in the Baile case that the learned judge who delivered
the opinion in the Henning case had overlooked the
express statute of the State, and it was further pointed
out that the correct doctrine announced by the great
weight of authority is that parol contracts of insurance
are valid, unless expressly prohibited by statute. The
rule thus announced in this State is in harmony with
and amply supported by the great weight of modern
authority. In 16 Am. and Eng. Ency. Law (2 Ed.), 852,
it is said: ''The contract is sometimes evidenced by a
binding slip signed by the insurer's agent, or by a mem-
orandum in his record book, but neither the Statute of
Frauds nor public policy requires it to be in writing,
and it is equally valid if made orally.'' Decisions from
the Supreme Court of the United States, and from the
Supreme Courts of Alabama, Illinois, Indiana, Iowa,
Kansas, Maine, Massachusetts, Minnesota, Missouri,

Nebraska, New York, Ohio, Oregon, Pennsylvania, South Carolina and Wisconsin are cited in the note to the text sustaining that doctrine.

The same rule is announced by the text-writers. Joyce on Insurance, vol. 1, sec. 525, says: "As we have stated in a preceding chapter, the company may be bound by an oral contract of insurance, or an oral agreement to insure; so an agent entrusted with blank policies, signed by the president and secretary, with authority to negotiate, fill up, and issue the same, may bind the company by a parol contract to insure, and an agent authorized to make the necessary surveys, and negotiate and conclude all the terms of the contract, and to fill up and countersign the policy, may bind the company by a parol contract to issue a policy. . . . . And a local agent of a foreign company, with similar authority, may bind the company by parol to contracts of original or renewal insurance."

Richards on Insurance, sec. 41, lays down the rule as follows: "An oral contract of insurance or an oral contract to issue a policy is valid, unless prohibited by statute, as by the civil code of Georgia, or sometimes by stamp laws, and will be binding from the time the oral contract is completed, although the loss occur before the policy is issued. The Statute of Frauds is not applicable; and, although the charter of a company provides that the contract of insurance must be in writing, this requirement is, by most courts, held to be a direction to the company, and not binding upon an innocent party, who has parted with value to the company in good faith under an oral contract."

May on Insurance (4 Ed.), vol. 1, sec. 23d, says: "On principle it would seem that at common law there could be no objection to an oral contract to make an insurance in future; or to issue a policy at a time named, or within a reasonable time, holding the applicant insured meanwhile (this is the usual agreement); or to insure now, making the full contract by parol, with-

out any expectation of a policy. So far the law is clear when the contracting parties are natural persons, and there is no statute in the way. But when a corporation makes the contract, or a statute enters the question, the problem is not so simple. Unless prevented by the charter a company may make valid oral insurance policies.'' Citing Henning v. Insurance Co., 47 Mo. 425, which, as above shown, is no longer the law in Missouri. But the rule is that, unless prevented by statute, a corporation has the same right to contract that an individual has, under the common law, and that, under the statute of this State, parol contracts of corporations are binding on the corporation if made by the corporation, or by an authorized agent, and that such contracts may be implied from the corporate acts, or those of the agent whose powers are of a general character; and that the provisions of the charter or by-laws, requiring the signature of the president to all policies of insurance, and using no prohibitory words, do not prevent the making of oral contracts.

There was, therefore, no error in the ruling of the trial court in admitting the evidence tending to prove an oral contract of insurance.

## II.

It is contended, however, that such a construction of the law impairs the obligation of the contract between the company and its agent, in that, under the written appointment of the agent, he had no power to enter into an oral contract of insurance, and that, therefore, the rights of the defendant, guaranteed by section 10 of article 1 of the Federal Constitution, would be denied the defendant.

This contention is untenable. The modern rule is that ''in order to come within the provisions of the Constitution of the United States, which declares that no State shall pass any law impairing the obligation of contracts, not only must the obligation of the contract

be impaired, but it must have been impaired by some act of the legislative power of the State, and not by a decision of its judicial department only." [Sedalia to use v. Donohue, 190 Mo. l. c. 417, and cases cited.]

### III.

It is next contended that at the time this contract was entered into, the Federal stamp act required all contracts of insurance to have an internal revenue stamp fixed thereto. [30 U. S. Stat. at Large, p. 448, et seq.] And it is argued that as the stamp cannot be fixed to an oral contract, it would enable parties to evade the stamp act and defraud the Government, by permitting oral contracts of insurance to be made, and therefore the oral contract relied on in this case was invalid.

Section 7 of the stamp act provides as follows:

"That if any person or persons shall make, sign or issue, or cause to be made, signed or issued, any instrument, document, or paper of any kind or description whatsoever, without the same being duly stamped for denoting the tax hereby imposed thereon, or without having thereupon an adhesive stamp to denote such tax, such person or persons shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not more than one hundred dollars, at the discretion of the court, and such instrument, document, or paper, as aforesaid, shall not be competent evidence in any court."

It is a sufficient answer to the contention to say that the literal wording of that statute is that the failure to stamp such instrument document or paper is made a misdemeanor and the document is inadmissible as evidence, but in this case there was no such instrument made, and none such is offered in evidence, and the statute does not prohibit the making of oral contracts, such as, under the common law, every person and every corporation has the right to make, under the

laws of this State, and under the laws of the United States.

In addition thereto it has been held that under the act the instrument may be received in evidence, unless it be shown that the omission to stamp it was with the intent to evade payment of the revenue, and that in the absence of such showing the instrument or contract is not void. [Hooper v. Whitaker, 130 Ala. 324; Small v. Slocumb, 112 Ga. 279.]   In the case last cited it was held that while Congress had the power to require revenue stamps to be placed on written instruments, and to prescribe a punishment for the failure or refusal to comply with that requirement, and to require that such instruments, unless stamped, should not be admissible as evidence in the Federal courts, it had no power to prescribe rules of evidence for the State courts, and, therefore, the act which declared that such instruments should not be received in evidence in any court until stamped, is to be understood as applicable to the Federal courts only.   To the same effect are Wade v. Foss, 96 Maine 230; Clemens v. Conrad, 19 Mich. 170; Sammons v. Halloway, 21 Mich. 162; Wilson v. Carey, 40 Vt. 179; Garland v. Gaines, 73 Conn. 662; Latham v. Smith, 45 Ill. 29.

## IV.

It is contended that Pace had no authority, under his written appointment, to make an oral contract, but that his power was limited, "to fix rates of premium, to receive moneys, and to countersign, issue, renew and consent to the transfer of policies of insurance, signed by the president or the secretary" of the defendant.

As hereinbefore pointed out, where an agent is entrusted with blank policies signed by the president and secretary of the company, with authority to negotiate, fill up and issue the same, he may bind the company by an oral contract to insure. [1 Joyce on Ins., sec.

525.] But even under the strictest construction of his appointment, the act of Pace, in this instance, may be regarded, under the facts in judgment, as a mere renewal of the contract that was to expire on the 7th of February at noon, and there are no rules, regulations or instructions of the company in this regard, tending to show that the agent had no power to renew a policy of insurance by a verbal agreement, and for consideration.

## V.

The St. Louis Court of Appeals reversed the former judgment in this case, because, after the plaintiff had introduced the deposition of Pace denying that he had authority to make a contract of insurance for ten days, the plaintiff introduced evidence of statements made by Pace, after the loss, tending to show that he had such authority and it was held by the St. Louis Court of Appeals that such statements were inadmissible, because they were not a part of the *res gestae* of the business Pace was transacting, and also because they tended to contradict the testimony of Pace, who was plaintiff's witness.

It is now insisted that on the trial anew, the plaintiff fell into "the same old error." The record discloses, however, that on this trial the plaintiff did not introduce the deposition of Pace, nor did he call Pace as a witness. It is true the plaintiff had formerly taken Pace's deposition, but he did not introduce it in this case. The record shows that in rebuttal, the plaintiff was called and asked whether or not Pace, the agent, or anybody else, had told him at any time that a policy could not be made for less than ten days. This was objected to on the ground, among others, that the plaintiff was thereby seeking to contradict Pace's testimony, and that the plaintiff could not do so because the plaintiff had taken Pace's deposition, although the plaintiff had not used it, and it had not, up to that time, been in-

troduced in evidence by either party. The objection was overruled, and the witness answered that he had no such knowledge. Thereupon, on cross-examination, it was proved that the plaintiff had called Pace as a witness on the former trial, and over the objection of the plaintiff the defendant introduced the bill of exceptions preserving the testimony of Pace on the former trial, and also introduced the deposition of Pace, which had been previously taken by the plaintiff.

It is plain, therefore, that in this case the plaintiff was not guilty of the error for which the St. Louis Court of Appeals reversed the former judgment. Here the plaintiff did not call Pace at all, and, therefore, the evidence admitted did not tend to contradict anything Pace had said, for up to that time Pace had not spoken either in person or by deposition, on this trial. Neither did the plaintiff, on this trial, introduce testimony as to statements made by Pace after the fire occurred.

## VI.

The first instruction is claimed to be erroneous, because it speaks of the building insured as "the property of the plaintiff." And it is argued that it was not the property of the plaintiff, because he had only $108 interest in it. The policy was a builder's policy. The contract required the plaintiff to take down the old building, and to furnish the church a complete building in consideration of the materials that came out of the old building, and $675 cash. The fact, if it be a fact, that the plaintiff had received all but $108 on the contract price, would not deprive him of an insurable interest in the building, for if the building was destroyed the plaintiff would have to rebuild it, and he would not be entitled to any further payments than were provided by the original contract. The plaintiff, therefore, had an insurable interest in the building; and the building was a part of the realty, and hence the plaintiff

had, at least, a qualified interest in the realty. [16. Am. and Eng. Ency. Law (2 Ed.), 846.]

## VII.

The second instruction for plaintiff is claimed to be erroneous because it gave the plaintiff the benefit of the valued policy law of Missouri. [Sec. 7969, R. S. 1899.] That instruction told the jury that although they might believe from the evidence that the building in question did not stand on premises owned by the plaintiff, yet if they believed that the plaintiff had contracted with the agent or building committee of the owners of the property to build a complete church building upon the premises, and turn the same over to the owners when completed and accepted by them, and that, at the time of the fire, said building had not been accepted by and turned over to them, then the plaintiff had such ownership or interest in said building as entitled him to insure the same and collect the insurance under the conditions mentioned in instruction 1 given for the plaintiff in this case.

It is claimed that the instruction is erroneous because the interest the plaintiff had was simply an interest in personalty, and that the valued policy law does not apply to personalty, but only to realty. This objection is more technical than real. The interest the plaintiff had was a builder's interest. That interest was in the building that was attached to the land, and was therefore a part of the land. True the building might be destroyed by fire, while the land could not; hence the necessity for insuring against loss by fire during the construction of the building. But the building was none the less a part of the realty because it might be destroyed by fire, like personalty may be destroyed by fire. The same argument might be applied to insurance on a building taken out by the owner of the land on which the building stood. Yet the valued

policy law applies to the buildings on the land and not to the land itself, and no good reason is perceived, or has been suggested, why there should be any difference in the application of the valued policy law to a policy taken out by the owner of the land and where the policy is taken out by the builder. The building is as much personalty to the one as it is to the other.

For the foregoing reasons the judgment of the circuit court is affirmed.

All concur.