Boyd **HOLDEN**, Plaintiff,

v.

**HANOVER FIRE INSURANCE COMPANY**, Defendant.

Civ. A. No. 1540.

United States District Court,
W. D. South Carolina,
Rock Hill Division.

Feb. 4, 1955.

Raymond B. Hildebrand, York, S. C., D. G. Yarborough, Lancaster, S. C., for plaintiff.

Joseph L. Nettles, Columbia, S. C., for defendant.

WILLIAMS, District Judge.

Boyd Holden brought this action under a policy of insurance issued by the defendant, Hanover Fire Insurance Company, covering a residence located in Lancaster County, South Carolina. The policy is in standard form, and this form, in accordance with the South Carolina Valued Policy Law Sec. 37–154, S.C. Code of Laws 1952, contains a clause fixing the value of his interest in the building insured at $2,500. It was dated December 6, 1951 and was to run for a period of five years. On March 1, 1952, the building was totally destroyed by fire.

The plaintiff made demand on the defendant for the total amount of the insurance, to wit, $2,500. This demand was refused on the ground that the defendant owned only one-tenth interest for life in the property. A settlement was agreed to between the parties based on the value of the property destroyed. This value was fixed at $6,749.31. One tenth of this amount plus the premiums paid were tendered to the plaintiff by check. The plaintiff did not cash this check but kept it in his possession until a short time before the trial. It was then returned to the defendant.

The case was tried before me without a jury and after hearing the testimony, I make the following:

Findings of Fact

The question of insurance was first discussed by an agent of the Hanover Fire Insurance Company with the plaintiff at the plaintiff's home. The plaintiff did not seek the insurance; defendant's agent called on him and asked him to permit him to write the insurance. Plaintiff quite frankly told the agent that he had only a lifetime interest in the property. The testimony disclosed that the plaintiff owned an undivided one-tenth interest for life in three tracts of land consisting of 250, 138 and 67 acres. There were approximately 250 acres of cleared land in the three tracts. The tract of land on which the building in question was located consisted of 67 acres, 48 acres of which were cleared. The house was built by the plaintiff at his expense three years prior to the time it was insured. While the testimony is not clear as to whether the other cotenants gave him permission to build the house, the only reasonable inference that can be drawn from the circumstances is that it was built with the knowledge and consent of the other cotenants. The plaintiff in this case was perfectly frank in stating to the agent what his interest was. He told the agent of defendant that he could find out at the courthouse just what his interest was, and the agent promised to look up the record and ascertain what interest he had and how much he could insure the house for.

The following is a portion of the testimony of the plaintiff:

Transcript pp. 5, 6, 11, 19–25, 1:

"Q. * * * of your insurance. Had you talked to Mr. Sullivan about this insurance before the policy was delivered to you, Mr. Holden? A. Yes, sir, 30 days. I gave him 30 days. I gave him 30 days to consider. I told him how it was.

"Q. You made application to him for insurance? A. No, sir, I didn't make no application. I told him how it was and if he could, insure it, yes, sir."

Transcript pp. 6, 11, 15–21:

"Q. Did you explain to Mr. Sullivan your interest in the property? A. Yes, sir.

"Q. What interest did you tell him you had in the property? A. Lifetime.

"Q. A lifetime interest? A. That's right."

Transcript pp. 7, 11, 11–16:

"Q. Who built the house that was destroyed by fire? A. I did.

"Q. You built that yourself? A. Yes, sir.

"Q. Upon land that had been owned formerly by your father? A. That's right."

Transcript pp. 9, 11, 8–19:

"Q. Now, I believe you built the house yourself, Mr. Holden? A. Yes, sir.

"Q. Did you purchase the lumber? A. Everything.

"Q. Do the work? A. Yes, sir.

"Q. Did any of the other people who had an interest in the land itself contribute anything to the building of the house? A. Not a thing.

"Q. You built it yourself? A. Yes, sir."

Transcript pp. 21, 11, 4–9:

"Q. You never showed the will to Mr. Sullivan? A. I don't think I did.

"Q. The policy was written on the basis of what you told him you had in the house; that was your life interest? A. He said he would go see it. I don't know whether he seen it or not."

Mr. Sullivan, defendant's agent, who approached the insured, did not testify at the trial. The testimony is therefore uncontradicted that the plaintiff informed the defendant through its agent that he merely owned a lifetime interest in the property, and suggested that the agent check the records and to let him know what insurance, if any, he could write on the property. Mr. Sullivan promised the defendant to check the records and notify him what insurance could be issued on his interest. Within 30 days the policy was issued, insuring the lifetime interest of the plaintiff in the sum of $2,500.

■ The defendant refused to pay the face amount of the policy, and it appears that an agreement was entered into between the plaintiff and the defendant to have an independent appraiser value the house. The plaintiff was to receive one-tenth of the sound value, together with the return of all premiums paid for insurance in excess of the amount so determined. This appraisal was made by Mr. Bagnal, a well-known contractor of Columbia, South Carolina, who appraised the house at $6,749.31, and proof of loss for one-tenth of that amount plus premiums was executed by the plaintiff. The plaintiff alleges that the proof of loss was fraudulently procured. The evidence, however, falls far short of proving any fraud in connection with the procurement and execution of the proof of loss.

The plaintiff is an uneducated man. He told the agent what interest he owned and left it entirely to the agent to determine by checking the records whether this interest could be insured and for how much. I find that the agent promised to read the will and that the agent thereafter found that the value of the plaintiff's interest in this property was $2,500.

■ I find that plaintiff did not make any misrepresentation to the agent with reference to the interest he owned in the property. I find further that the testimony is uncontradicted that the agent was told that he should look at the court records and then determine what amount of insurance he could issue, if any. The agent took 30 days to determine the type of policy and the amount of insurance that could be issued on plaintiff's interest. Defendant found that the plaintiff's interest was valued at $2,500 and that a Valued Policy under Sec. 37–154,

S.C. Code of Laws 1952, was issued to the plaintiff. This value was agreed to by the plaintiff.

It is difficult to determine how the agent of the defendant determined the plaintiff's interest in this house. He was informed by the plaintiff that he had only a lifetime interest in the property and he undoubtedly was referring to a partial lifetime interest in the entire property; that the court records would show exactly what his interest was; that he had built the house entirely with his own money; that he had lived on the same tract of land for 20 years and that he had built the house in question three years prior to the time of the loss. The plaintiff could safely assume, therefore, that the agent of the company examined the records, took into consideration the other statements made by the plaintiff and under the Valued Policy Law of South Carolina placed a value on plaintiff's interest in the house of $2,500. The mistake, if any, was not made by the plaintiff. The determination of value was made by the defendant's agent after investigating the record and all the facts and circumstances connected with the case. I find that a value of $2,500 was placed on the interest of the plaintiff in view of all the information the insurer had or should have had and that the company should pay the entire amount of the policy.

### Conclusions of Law

■■ I find as a matter of law that notice to the insurance agent, who was acting within the scope of his authority, is chargeable to the insurer. The insurer had notice that the insured had only a limited interest in the property. The insured placed the full responsibility on the insurer to determine what amount of insurance, if any, could be issued on this limited interest. It is well settled that knowledge of the agent acting within the scope of his authority is knowledge to the insurer.

" * * * The general rule of insurance law is that the knowledge of, or notice to, an insurance agent as to a matter within the scope of his authority, and which is acquired while the agent is acting within the scope of his authority, is chargeable to the insurer. Where such knowledge of an insurance agent relates to a material misrepresentation or breach of warranty or condition which would otherwise render the policy unenforceable at its inception, the insurer issuing the policy will not be permitted to take advantage of such breach, or cause of forfeiture. This rule is applicable, for example, and has been applied, to knowledge of or notice to agents of insurers in respect of the following: the title or unconditional and sole ownership of the insured property; the existence of encumbrances against the insured property; * * *." 29 Am.Jur., 612, Insurance, § 808.

■ There are no South Carolina decisions which will be helpful in this case. The general rule, however, is quite clear that an insurer cannot go behind the terms of a valued interest policy and show that the insured's interest is worth less than the amount of the policy, especially when the insurer had full information of the limited interest which the insured had.

"It is recognized by all the cases decided upon the question that, under the provisions of the valued policy statute, the insured insuring the property at a given valuation accepted by the insurer at the time of the issuance of the policy as the value of the insured's interest, may recover the full value insured, even though he in fact has a limited or qualified interest worth less than the amount of the insurance. The insurer may not go behind the policy and show that the insured's interest is worth less than the amount of the policy. Bright v. Hanover F. Ins. Co. (1907) 48 Wash. 60, 92 P. 779 (where it was contended that the statute as to valued policies does not apply where the interest of the

insured is a limited or qualified one, such as that of a tenant, or purchaser in possession, etc., but the court repudiated this contention, saying: 'We perceive no sound reason for holding that the act does not apply to an insurance on special or limited interest in real property; on the contrary, we think the plain reason and policy of the law requires us to hold otherwise'); King v. Phoenix Ins. Co., (1906) 92 S.W. 892, 195 Mo. 290, 113 Am.St.Rep. 678, 6 Ann.Cas. 618 (where a contractor was permitted to recover the entire amount of the policy, and attempts to show that his interest in the property was less, were disregarded); Mississippi F. Ins. Co. v. Planters' Bank (1925) 138 Miss. 275, 103 So. 84 (where a lessee was allowed to recover the full value of the buildings, as against the contention that the effect of such holding would render the policy a wagering contract); American Cent. Ins. Co. v. Antram (1905) 86 Miss. 224, 38 So. 626 (where a builder's risk was held to be covered by the valued policy statute, and the builder allowed to recover to the full extent of the value of the property).

"In La Font v. Home Ins. Co. (1916) 193 Mo.App. 543, 182 S.W. 1029, it was held that the valued policy statute applies to a policy insuring an undivided interest in property, and the insurer is estopped from denying that the property insured was worth the amount of the policy at the time of its issuance." 68 A.L.R. 1352.

■■ I find that the agreement between plaintiff and defendant which provided that plaintiff was to receive the sum of $698.01 in full settlement of his claim is invalid. The claim in this case is liquidated. The plaintiff cannot waive the benefit of a valued policy statute. The law is clearly stated in the following citation from 29 American Jurisprudence 894, Insurance, § 1189:

"Claims for total loss under valued policies of insurance on property are considered liquidated demands, and in accordance with the rule relating to accords and satisfactions generally, settlements between the insurer and the insured under such policies for a sum less than the face of the valued policy have been held not supported by a consideration and not to constitute a bar to a recovery of the balance of the face value where a total loss was shown. Such a result has also been reached upon the ground that the insured cannot waive the benefit of a valued policy statute, which is a part of the public policy of the state." See also 109 A.L.R. 1485 and the cases cited therein.

■ It is therefore clear that the plaintiff was without fault; that the insurance company was put on notice that it was insuring a limited interest in the property; that it knew that the plaintiff had built the house with his own money and had occupied this house and another house on the same premises for a period of 20 years; that it was the defendant's legal duty to ascertain the interest the plaintiff owned and that the plaintiff had a right to assume under the facts of this case that the insurer had ascertained the facts and that the policy was issued on the basis of the knowledge within the insurance company's possession; that the value fixed by insurer was accepted by the insured.

Now, therefore, pursuant to the foregoing findings of fact and conclusions of law,

It is ordered that the plaintiff Boyd Holden have judgment against the defendant, Hanover Fire Insurance Company, for the full amount of the policy, to wit, $2,500, together with the costs and disbursements of this action.