John A. O'Reilly, Respondent, v. The Corporation of the London Assurance, Appellant.

J., an agent of defendant, was authorized by it to receive proposals for fire insurance, fix rates, receive moneys and countersign, issue and renew policies which were furnished him in blank, signed by defendant's manager, to be filled by him; he entered the insurance he effected in books kept by him, and made daily and monthly reports to defendant. J. issued a policy to C., which contained a clause providing that it might "be continued for such further time as shall be agreed on, provided the premium therefor is paid and indorsed on this policy, or a receipt is given for the same." In an action wherein plaintiff, as assignor of C., claimed a renewal of the policy, his evidence was to the effect that about a month before the expiration of the policy, J. and C. had a conversation in reference to the insurance, in which C. told J. to renew the policy, and the latter stated he would renew it for another year; a loss occurred after the expiration of the original policy; no renewal receipt was ever executed; no renewal was indorsed on the policy or entry thereof made by J., or report thereof made by him to defendant; the premium was not paid, tendered or otherwise arranged, and no action or further conversation had between J. and C. in regard to the insurance until after the fire, although J. and C. were near neighbors. During six months after the fire, C. made no claim under the policy and gave no notice of his loss. *Held*, that the

testimony failed to show, and did not justify a finding of a renewal of the policy.

(Argued March 1, 1886 ; decided March 16, 1886.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made January 23, 1884, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was upon an alleged agreement to renew a policy of fire insurance.

The material facts are stated in the opinion.

*Louis Marshall* for appellant. Jackson was not authorized by the defendant to make the alleged contract of renewal. (*Mersereau* v. *Phœnix M. L. Ins. Co.*, 66 N. Y. 278.) By the terms of the eleventh condition of the policy, Jackson, in any transactions that may have occurred between him and Craner with reference to the renewal of the policy annexed to the complaint, acted as the agent of Craner and not of the defendant, and he not having communicated the fact of such negotiations that may have occurred between him and Craner to the company, and the latter not having taken any action thereon, no contract of insurance was effected in favor of Craner. (*Sargent* v. *Nat. Ins. Co.*, 86 N. Y. 626 ; *Sower* v. *Com. Un. Ins. Co.*, decided recently in Supreme Court of Pennsylvania ; *Rohrback* v. *Germania F. Ins. Co.*, 62 N. Y. 47 ; *Alexander* v. *Germania F. Ins. Co.*, 66 id. 464 ; *Van Schaick* v. *Niagara F. Ins. Co.*, 68 id. 434.) Whatever may have been Jackson's legal relation to the defendant, and whatever may have been his powers, there is not as matter of fact evidence of a contract to renew. (*Luby* v. *H. R. R. Co.*, 17 N. Y. 131 ; *Anderson* v. *R. W. & O. R. R. Co.*, 54 id. 344 ; *People, ex rel. Tenth Nat. Bk.*, v. *Green*, 5 T. & C. 379 ; *Dean* v. *Ætna L. Ins. Co.*, 62 N. Y. 643 ; *White* v. *Miller*, 71 id. 118 ; *Coulter* v. *Am. M. U. Ex. Co.*, 56 id. 585 ; *Nichols* v. *White*, 85 id. 531.) A contract to renew a policy of insurance is a contract to continue the insurance upon the terms and condi-

tion of the original policy, and there can be no recovery for breach of such a contract, except upon showing compliance with the conditions precedent to a recovery upon the policy. (Wood on Fire Ins., § 131; *Hay* v. *Star Ins. Co.*, 77 N. Y. 235.) There cannot be a recovery in this action, because Craner failed to pay the premium of insurance, and failed to establish a waiver of such payment by the defendant. (Wood on Fire Ins., § 5; *Wood* v. *Poughkeepsie Ins. Co.*, 32 N. Y. 619; *Hambleton* v. *Home Ins. Co.*, 6 Bissell, 91.)

*John B. Kline* for respondent. Jackson was the agent of the defendant in the locality in which he acted, and had full authority to make the contract to renew the then existing policy. (*Trustees, etc.*, v. *Brooklyn F. Ins. Co.*, 19 N. Y. 305, 311; *Ellis* v. *Albany City F. Ins. Co.*, 50 id. 402–409; *Angel* v. *Hartford F. Ins. Co.*, 59 id. 171; *Parker* v. *Arctic F. Ins. Co.*, 1 Sup. Ct. [T. & C.] 397; Wood on Fire Ins., § 11.) Jackson was the agent of defendant and not of Craner in making the contract of renewal. (*Partridge* v. *Commercial F. Ins. Co.*, 17 Hun, 95, 97.)

EARL, J. From 1876 until after the commencement of this action, one Amos Jackson was the agent of the defendant at Jordan in this State, under a written appointment by which his powers were limited and described as follows: "To receive proposals for insurance against loss and damage by fire in Jordan and vicinity, to fix rates of premiums, to receive moneys, and to countersign, issue, renew and consent to the transfer of policies signed by the managers for the United States for the London Assurance Corporation, subject to the rules and regulations of said company, and such instructions as might be given from time to time by its managers." He was furnished by the defendant with blank policies signed by its secretary, which he filled up when applications for insurance were made to him; he entered the insurances effected by him in books kept by him, made to the company daily and monthly reports of his transactions, and made monthly remittances of premi-

ums. On the 14th day of August, 1879, he issued a policy to one Nicholas Craner upon a building owned by him in the village of Jordan, insuring him against loss by fire to the amount of $1,500 for one year from that date. The policy contained the following provisions: "This insurance (the risk not being changed) may be continued for such farther time as shall be agreed on, provided the premium therefor is paid and indorsed on this policy, or a receipt given for the same, and it shall be considered under the original representation and for the original amounts and divisions unless otherwise specified in writing." "This corporation shall not be liable by virtue of this policy or any renewal thereof unless the premium therefor shall be actually paid.". In July, 1880, about four weeks before the expiration of the policy, Jackson went to Craner and had the following conversation with him as detailed by Craner in his evidence: "He came in and said I had better put another thousand dollars upon the building. He wanted to know if I was not ready. I said I would run a little risk myself, but I thought that I would not then. Then he spoke about the other, and said it would not be but $15 the next year, and that was low. I told him I thought it was very reasonable, but that I would run some risk myself. I don't know whether he said when it expired. He said he wanted to put on another thousand. He did some little trading, I guess, with me at the time. He didn't say any more then; that is all the conversation I remember at the time. Q. Did you state to him that you would pay the premium? A. Nothing was said about it; I told him to renew the policy — it was $1,500, and he wanted a thousand more. I understood him to say he would renew it." Craner's son testified that he heard the same conversation, and he stated it as follows: "Jackson wanted to put on a thousand dollars more; father said he thought he would run some risk himself; Jackson thought it would be but one per cent now, or $15 for $1,500; father said he knew it was low, but that he would carry but $1,500; Jackson said he was a good customer of father's and would like some of his insurance business; father said he would carry that, and Jackson said all

right, he would renew it for another year; my father told him at the store all right, to keep it in force; that was at the store in 1880; Jackson said he would." Jackson, called as a witness for the plaintiff, gave a different version of the conversation, and substantially denied that he agreed to renew the policy. The property insured was destroyed by fire on the 2d of February, 1881, about seven months after this conversation; and in the meantime, although Craner and Jackson were near neighbors and met almost daily, they had no conversation whatever about the insurance or the renewal of the policy, and the subject was never mentioned between them. No renewal receipt was ever executed or given by Jackson to Craner, and the renewal was not indorsed on the policy, and no entry of the renewal was ever made on any paper or in any book by Jackson. The premium was not paid or tendered or otherwise arranged, and no report of the renewal was made to the defendant, and no action whatever was taken by either party in reference thereto previous to the fire. By the same fire which destroyed Craner's building, Jackson lost a building which was insured by the defendant, and he was present at the fire, and upon informing the defendant of his loss congratulated it and himself for not having any risk upon Craner's property; and upon being spoken to by Craner the next day after the fire, he stated to him that he was not insured; and during six months thereafter Craner made no claim upon his policy and gave no notice of his loss. In January, 1882, he transferred his claim against the defendant to the plaintiff, who paid $1 therefor, and in addition thereto agreed to give him one-half of what he should recover of the defendant.

Upon these facts we think it cannot be held that Craner had a valid insurance or a valid contract for insurance upon his property. There was no present renewal of his policy, and, considering the terms of the policy and all the circumstances, we think Craner and Jackson could not have supposed or understood that a binding contract for the renewal had been made. The premium was not paid or arranged in any way, and it was not agreed that credit should be given therefor. There was

nothing but the casual conversation detailed by the two witnesses which took place four weeks before the renewal would be needed. Further action must have been contemplated by the parties to the transaction. Craner should have paid or tendered the premium and asked for the renewal. It cannot be held that payment of the premium was waived, as the defendant knew nothing about the alleged renewal, and Jackson either did not understand that there was any renewal, or had forgotten the conversation he had had with Craner.

In order to uphold and enforce this insurance, we would have to go further than any decision of this court has yet gone, and lay down an impolitic rule which would make the business of insurance, transacted through agents all over the country,·far away from their principal, altogether too hazardous and uncertain.

Therefore, without noticing other points argued on behalf of the appellant, we are of opinion that the judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except DANFORTH, J., not voting.

Judgment reversed.