(47 App. Div. 81.)

ABEL v. PHŒNIX INS. CO.

(Supreme Court, Appellate Division, Third Department. January 8, 1900.)

1. INSURANCE—ORAL CONTRACT TO INSURE—RENEWAL.
Where plaintiff's last insurance was had with the defendant insurance company through the same agent, the word "renew," in an oral contract with such agent to renew the insurance, sufficiently designates the company, as well as the property to be insured, and the terms of the policy.

2. SAME—EVIDENCE.
Plaintiff testified that he applied to an insurance agent for a renewal, and was told the amount of the premium for three years, and told the agent he would insure for one year only, and paid $5 on account of the premium of $7.20, and that the agent gave him credit for the balance, and stated that the policy would be issued. Defendant's agent testified that he told plaintiff he must pay the full amount of the premium before the policy would issue, as he had not paid the entire amount of the former premium, and also owed the agent on another account; that plaintiff paid $5, and promised to borrow an amount sufficient to pay the premium for one year, but that he never returned, and no policy was ever issued. *Held* insufficient to establish an oral contract to insure.

Merwin, J., dissenting.

Appeal from judgment on report of referee.

Action by Andrew J. Abel against the Phœnix Insurance Company. From the judgment entered on a report of a referee, defendant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, KELLOGG, and MERWIN, JJ.

De Forest Van Vleet, for appellant.
Newman, Blood & Banks, for respondent.

PARKER, P. J. If the statement which the plaintiff gives of the transaction between himself and the agent, Smith, on March 6, 1897, is to be credited, it must be conceded that a contract for insurance was then and there made with the defendant, which was obligatory upon it, although no policy was ever issued, and the judgment in this

action must be sustained. According to his statement, the agreement then was to "renew his insurance for one year." His last insurance, had through this agent, was with the defendant company; and, by force of the term "renew," the company, as well as the property to be insured, and the terms of the policy, was sufficiently designated and agreed upon. And it is also clear that the right to so act for this defendant was within the scope of Smith's authority as its agent. Ellis v. Insurance Co., 50 N. Y. 402; More v. Insurance Co., 130 N. Y. 537, 543, 29 N. E. 757; Angell v. Insurance Co., 59 N. Y. 171. But the serious question presented is whether the plaintiff has established the agreement which he claims to have then made by a fair preponderance of evidence. His insurance had in fact expired some six months before he made this application for its renewal. Although that prior policy had run three years, he still owed Smith a balance for premiums on insurance, and also some balance on bill for coal sold and delivered,—something over $20 in all. Smith testifies distinctly: That when the plaintiff applied for the renewal he asked what the premium would be, and was told that it would be $13.50 for the same term, of three years. That the plaintiff then handed him a $5 bill. Smith took it, but said to the plaintiff, "I must have this premium in full." Upon Smith's refusal to give credit for the premium, saying to him that he had let it run all he could afford to, and upon being told that the premium for one year would be some $7.20, the plaintiff said "he did not know whether he would have it for one year or three-years; he would go out and see if he could borrow some money, and he would come back." That he went out, and never came back, and that he never spoke to him (Smith) again about insurance until after the fire. No entry whatever was made by the agent of the transaction. He swears that he did not treat or consider it as any agreement for insurance, and never reported it to the company. Smith further testified that at the time he declined to let the premium run he called the plaintiff's attention to the fact of the indebtedness then owing him. The plaintiff's version is to the effect that, when he was told the amount of the premium for three years, he told the agent he would have it insured for one year only; he paid the $5 on account of the premium of $7.20, and the agent gave him credit for the balance, saying that it would be all right, and that the policy would be issued. Here is a direct conflict of evidence as to what occurred. Manifestly, if the agent's version is correct, no agreement whatever was reached. It was left open for plaintiff to determine whether it should be for one or three years, and all was to depend upon whether plaintiff could borrow money enough to pay for either. As between these two witnesses, the story of the agent is much the more credible. If the agent gave credit for the $2.20 necessary to make up the premium for one year, he must necessarily take the risk upon himself, and advance the amount to the company. There was no reason whatever why he should take that risk, and his past experience gave abundant reason why he should not. It is clear that unless he did give that credit no insurance was contracted for. On the plaintiff's own version, the contract was incomplete unless such credit was extended to him. His leaving the $5 with the agent was of no force

unless it was accepted as a part payment for the new insurance, and credit given him for the remaining $2.20. It is highly improbable that the agent would continue longer to carry him, and, in the face of a direct conflict between the two, the preponderance is with the agent, rather than with the plaintiff. The plaintiff has a personal interest in the event, at least as much as the agent; and I can perceive no force in the claim that he would not have left the $5 with the agent, had he not paid it to him on the premium. He went to get enough more to secure insurance. When he found he could not, he did not return for the $5, well knowing that the agent had a demand against him for a much greater amount. And, for the same reason, there is no significance in the fact that the agent continued to hold it. Under such circumstances, no presumption arises that he held it for the company. It is claimed that the agent is discredited by the witness Mosher. His evidence does not, in my judgment, amount to a contradiction. As summed up by himself on his final direct examination, he says that soon after March 6, 1897, he asked Smith if the policy to Abel was assigned (meaning to his wife, as mortgagee), and that Smith replied that he would attend to the assignment; that it would be all right. Smith recollects a conversation in 1893 about the prior policy, but denies any recollection of one in 1897. Mosher is an interested witness, hoping to take, on his wife's mortgage, whatever insurance shall be recovered in this action; and his statement of the conversation with Smith is by no means clear. But, assuming that he is correct, he says it was "a casual conversation, lasting but a second or two." Smith did not say there was any insurance then existing,—simply that he would attend to having it assigned to Mrs. Mosher, as mortgagee; indicating that it was not yet done, and meaning, presumably, that, if Abel ever raised money enough to take it out, he would see that Mrs. Mosher was properly protected. An inquiry and reply lasting but a few seconds, when no time for explanations existed, and very soon after March 6th, may fairly be so construed.

While it is well settled that a contract to insure may be made by parol, and will be enforced against the company, though made by an agent, if he has authority to insure, yet it is manifest that the contract is of such a character that the proof by which it is sought to be established should be closely scrutinized, and nothing short of a clear preponderance of evidence should be allowed to prevail. The facts to be established are so few, and rest so entirely in parol, that a person suffering a loss is under a strong temptation to distort a conversation upon the subject of insuring into an agreement to insure. The plaintiff has but to narrate an alleged conversation with the agent alone, and prima facie the insurance is secured. The company is powerless to resist the claim, save through the agent's denial that it ever occurred. In the case at bar the plaintiff's claim for insurance rests entirely upon the conversation had with the agent. No receipt or memorandum was given for the $5 claimed to have been paid on account of premium. No effort was ever made through the year that intervened before the fire to obtain possession of the policy, or to ascertain if it had ever been written. The plaintiff was as inat-

tentive to the matter as he would have been had no agreement whatever been reached. True, he may have expected that the agent would deliver the policy to Mosher, as he says he directed him to do, but it is evident he never took the trouble to ascertain whether it was so delivered. In fact, his subsequent conduct was entirely consistent with the idea that no agreement for a policy had been made, and quite inconsistent with the idea that one was to be delivered to him or to Mosher. So it is inexplicable why Mosher did not some time during the year inquire why the policy was not delivered to him. Surely, under such circumstances, the conversation, upon which alone plaintiff bases all his rights, should be established by a clear weight of evidence. When it is distinctly denied by the agent, the plaintiff should be corroborated, or the agent discredited, by clear and unequivocal facts. The alleged declaration of an agent that may be in entire harmony with his denial should not be deemed sufficient for either purpose. Although the case of O'Reilly v. Assurance Corp., 101 N. Y. 575, 580, 5 N. E. 568, has some features in it different from the one at bar, the principle is there recognized that such contracts are "uncertain and hazardous" in their character, and that clear proof of the agreement should be required. My conclusion is that this judgment is erroneous, and must be reversed.

Judgment reversed, referee discharged, and new trial granted; costs to abide the event. All concur, except MERWIN, J., who dissents.