by the judgment of foreclosure, but it is very possible that he, as receiver, might have a claim against the surplus for the value of the rents which he might be deprived of by the cancellation of the lease. But it is unnecessary to discuss here the interest which Scofield or any one else might have in that surplus. It is sufficient to say that there is no authority in the mortgage to fix Mrs. Lapham's present value of the annuity, but that all she is entitled to receive out of the proceeds of the sale is what was due her at the time of the sale upon her annuity, and that whatever remains by way of surplus after making all the payments to which the parties to the action were entitled is to be paid into court, to await its further order, and, when that surplus shall have been ascertained, then these rights can be adjudicated intelligently.

The result, therefore, is that the judgment appealed from must be modified by striking out so much thereof as requires the appellant, Scofield, to account for the rents received by him under this lease, and by directing that the surplus, after making the payments due upon prior liens, and paying to Mrs. Lapham the amount due to her at the time of the commencement of the action, shall be paid into court, to await the further order of the court, and also by vacating so much of the judgment as requires the appellant, Scofield, to pay one-half of the referee's fees and the fees of the stenographer, and as modified affirmed, with costs to the appellant against the respondent. All concur.

---

(64 App. Div. 9.)

BROWN v. DUTCHESS COUNTY MUT. INS. CO. OF POUGHKEEPSIE.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. INSURANCE—AGENT'S AUTHORITY—AGREEMENT TO RENEW POLICY.
    Where, in an action against an insurance company to recover on an alleged parol agreement for insurance, no written appointment of the agent was offered, nor any evidence that he had ever done anything for the company except countersign and deliver the policy in question, the agent will not be deemed to have had authority to bind the company by an oral agreement to renew the policy, when it expired 10 months later.

2. SAME—CONTRACT TO INSURE.
    Where plaintiff agreed with defendant's agent that he should renew the insurance on plaintiff's property when it expired, and that the insurance was to be taken out with the defendant company if the rates were no higher, otherwise to be taken in some other company, there was no contract with defendant for insurance, and an action will not lie therefor after loss, and a failure of the agent to renew the policy.

3. SAME—EVIDENCE—DECLARATIONS OF AGENT—TERMINATION OF AGENCY.
    In an action to recover on an alleged parol agreement for insurance, it was error to admit declarations of the defendant's agent as to the contract for insurance, where he was not the defendant's agent when the declarations were made.

Appeal from trial term, Erie county.

Action by Morris Brown against the Dutchess County Mutual Insurance Company of Poughkeepsie. From a judgment in favor of the plaintiff, the defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Porter Norton, for appellant.

Moses Shire, for respondent.

RUMSEY, J. The action was brought upon an alleged parol agreement for insurance made with one O'Shea, the plaintiff's assignor, by which it is claimed that the agent of the defendant on the 26th of May, 1898, agreed to issue to O'Shea a policy of insurance for one year, to take effect on the 19th of March, 1899, upon certain property situated upon Main street, Youngstown, Niagara county, in this state. The premises were destroyed by fire on the 14th of April, 1899, and, after giving notice of the fire and serving proofs of loss, the claim against the defendant was assigned to the plaintiff, who thereupon brought this suit upon it. The defense is a denial that the person claimed to be the agent of the defendant was such, or that he made the contract, or had any authority to make it. In March, 1898, one Edwards was the agent of the defendant, and on the 19th day of that month he issued a policy of insurance for $1,000 upon the premises in question in the defendant company. The property thus insured seems to have been sold to O'Shea in the month of May, 1898, and the fact of that transfer was indorsed upon the policy. On the day when the indorsement was made, O'Shea testified to a conversation with Edwards, out of which the parol contract of insurance by the defendant is claimed to have accrued. It was submitted by the court to the jury whether this conversation took place substantially as testified to by O'Shea; the jury being told that if O'Shea's story was true, and if he and the people interested in the property relied upon the defendant to renew the policy and keep the property insured, then the plaintiff was entitled to a verdict. At the close of the plaintiff's case, and again at the close of the evidence, the court was requested to nonsuit or to order a verdict for the defendant, upon the ground that no case was proved against the defendant; that whatever case was proved was not against the defendant, whoever else it might be against. These motions were denied, and the defendant duly excepted. When the case was submitted to the jury, the court was requested to charge that the agreement testified to by O'Shea did not bind the company, which was refused, and an exception taken. The court was then asked to charge that the agreement for renewals testified to by O'Shea as having been made with Edwards was an act distinct from his relations with the company, which was refused, and the defendant excepted. The court was further requested to charge that, under the evidence in the case, Edwards had no authority to agree to the renewal testified to, which was also denied, and an exception taken. A motion for a new trial was denied, and from the judgment thereupon entered, and from the order denying the new trial, this appeal is taken.

The policy of insurance upon which the defendant was undoubtedly bound was made on the 19th day of March, 1898, and expired on the 19th day of March, 1899. The conversation which is claimed to have

created the parol contract, by reason of which the defendant is said to be bound for another year from the expiration of the written policy, on the 19th of March, 1899, was had between O'Shea and Edwards on the 26th of May, 1898. It is quite possible that proof might be given which would establish a contract of that kind, made nearly a year before the policy expired, to renew it for another year after its expiration, and by virtue of which the company would be bound to issue a new policy upon the expiration of the former one; but no such contract was established in this case, and it was error, therefore, on the part of the court, not only to refuse to nonsuit or direct a verdict for the defendant, but to refuse the requests to charge made by the defendant.

It was shown that Edwards was the agent of the company, but no written appointment was offered in evidence, nor was there any proof, from the beginning to the end of the case, that he had ever done anything for the company, except to countersign and deliver the written policy on the 19th of March, 1898. There was no proof from which the extent of his powers could be inferred, or that he had any authority to make this contract of renewal, or ever did anything more than the mere countersigning of policies which had been sent to him. It does not even appear that he was intrusted with policies which he could deliver upon contracts made by himself. The original written contract of insurance was not made with O'Shea, but with one Gibbons, who then appeared to be the owner of the property. The failure to prove the authority of the agent to make this contract, or any other contract, would be sufficient to require the reversal of the judgment, not only within the well-settled and ordinary rules which govern the relations of principals and agents, but within the case of Shank v. Insurance Co., 4 App. Div. 516, 40 N. Y. Supp. 14, in which case it was held that the authority there shown was not sufficient to charge the insurance company with liability upon such a contract as is sworn to here.

But, even if there had been proof of the agency, there is not sufficient proof of the making of the contract. The talk between Edwards and O'Shea took place on the 26th of May, 1898. The story is that, on that day, O'Shea said to Edwards that he would rely upon him to see that the policy should be renewed at the end of the year, as he was not able to get a policy upon the property for three years, and Edwards replied that when the time came he would get the policy renewed, and that O'Shea need care no more about it. O'Shea further testified that Edwards recommended the defendant company to him, as he was especially interested in it, and said again that, as representative of it, he would see that the property was insured. To this it was said by O'Shea that, in case the rates were higher on the policy when it came to be reinsured, to let him know, but that if the rates were no higher he accepted the insurance as it was. Edwards replied that, if the rates were higher, he would let him know; if they were no higher, he would reinsure. O'Shea then testified that afterwards he saw him again, and asked him if there was any danger of the reinsurance being neglected if he went away, to which Edwards answered, "I will attend to it." O'Shea

then continued to testify that: "Then I think there was a conversation if he insured it in any other company he would inform me about it; but I wanted this company as long as he recommended it. He said he would renew the policy." There were other conversations afterwards to the same effect. We do not think that this testimony establishes any agreement on the part of Edwards to issue a policy of insurance for any particular time, or at any particular rate, or in any particular company. The most that can be said, as the result of this conversation, was that Edwards understood that, when the policy in the defendant's company expired, he was to see that the insurance was renewed; that he was to renew the insurance in the defendant's company if the rates were no higher, but if he saw fit to place it in any other company he was at liberty to do so. This clearly did not constitute a binding contract with the defendant company, because Edwards was at liberty, as the result of that conversation, to insure that property in any other company he wished. That being so, the effect of the conversation was simply to make a parol agreement on the part of Edwards to see that this property was kept insured, leaving it to him to renew it with the defendant company if the rates were no higher, or to place it in some other company if he saw fit. So, even if the evidence of O'Shea be accepted as the jury did accept it, as representing the truth in the matter, yet it was not sufficient to charge the defendant with any liability for the insurance upon this property.

In addition to these reasons why the plaintiff cannot recover against the defendant upon the proof as it stands here, there was serious error in the admission of evidence. It is undisputed that Edwards ceased to be the agent of the company on the 17th of September, 1898. The fire took place on the 13th of April, 1899, some months after Edwards had ceased to be the agent of the defendant, or represent it in any way. The evidence of a witness was offered as to a conversation with Edwards on the 14th of April, 1899, as to the insurance upon this property. This was objected to by the defendant upon the ground that at that time Edwards was not the agent of the company, and therefore that the evidence was incompetent and immaterial. Over that objection, the witness gave testimony from which it might possibly be inferred that Edwards had made the parol agreement to insure the property as testified to by O'Shea. In our judgment, this testimony was absolutely incompetent. The declarations of an agent are admissible against his principal only when made during the continuance of the agency, and in regard to transactions depending at the time. Greenl. Ev. §§ 113, 114; Anderson v. Railroad Co., 54 N. Y. 334. Within the rules there laid down, these declarations of Edwards were absolutely immaterial, and should have been excluded. For these reasons, the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the result of the action. All concur.