### UNDERWOOD v. PENNSYLVANIA FIRE INS. CO.

(Supreme Court, Trial Term, Suffolk County. January, 1912.)

1. INSURANCE (§ 145*)—STANDARD FIRE POLICIES—RENEWAL—AUTHORITY OF LOCAL AGENT.
    Under a fire policy of the New York standard form which provides that the policy may be renewed on payment of a premium for the renewed term, but that any increase of hazard must be made known at the time of the renewal, and that no agent shall have power to waive any condition of the policy, etc., a local agent cannot bind insurer by promising to renew a policy eight months before its expiration, with no payment of renewal premium and without regard to any change of the hazard.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 276-291; Dec. Dig. § 145.*]

2. INSURANCE (§ 145*)—FIRE POLICIES—INTENT TO RENEW—EVIDENCE.
    Mere indifference of insured at and after the expiration of the original term of a fire policy did not show an intent to renew, though he relied on insurer's local agent's oral promise, made eight months before, that he would renew the insurance by issuing a new policy.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 276-291; Dec. Dig. § 145.*]

3. INSURANCE (§ 145*)—FIRE POLICIES—RENEWAL—AUTHORITY OF AGENT.
    While an oral agreement to renew fire insurance may be valid, though made by insurer's local agent, the circumstances must be such as to indicate apparent authority in him.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 276-291; Dec. Dig. § 145.*]

Action by William Underwood against the Pennsylvania Fire Insurance Company. Judgment for defendant.

Alexander G. Blue (George H. Furman, of counsel), for plaintiff.
Hartwell Cabell, for defendant.

PUTNAM, J. Plaintiff owned a one-story cement building in Patchogue, which in 1908 was used as a bakery. He insured it with the defendant through Mr. Wiggins, a local agent, who represented defendant and other companies, for one year from December 14, 1908, to December 14, 1909. The insurance was $600 on building; $200 on stock of flour; and $100 on counter, shelves, show cases, and other fixtures. Through Mr. Wiggins' agency, plaintiff had also insured his residence for many years.

In March following, plaintiff sought to raise a mortgage loan on this bakery property. A Mr. Arnold became the mortgagee, and at an interview regarding this loan it is claimed Mr. Wiggins told the plaintiff that he would renew the insurance when it should run out and would then give a new policy to be held by Arnold as mortgagee. In April, after the loan had been made, Mr. Wiggins wrote on the policy the clause making it payable to the mortgagee, who then held the policy. As to the insurance on plaintiff's residence, he testified that it had been payable to same mortgagee, and that Mr. Wiggins habitually renewed the expiring policies, and, as notified, plaintiff would come over to his office and pay the premiums. Mr. Wiggins denied any recollection of this alleged agreement as to the bakery, and it did not appear that any such arrangement had been reported to the defendant's office.

In the following August, plaintiff changed the use of this bakery, and thereafter occupied it to sell hay in bales.

On December 14, 1909, the policy ran out, and nothing was done by the agent or the assured. Mr. Wiggins states that he knew the bakery business had been given up, and either thought the property was vacant or that it was not such a risk as he wished to write. And so the situation remained, without any new policy or request for it, until March 4, 1910, when a fire broke out, damaging the building and its contents.

This action is brought upon an alleged agreement to issue a standard fire policy on the premises, which it is alleged Mr. Wiggins had agreed to do in continuation of the original policy, and to recover a loss of $719.90. Special issues were submitted to the jury, who found that the agent did verbally agree to renew the insurance, and also that the change of occupation from a bakery to the hay business did not increase the hazard. Both sides moved for judgment upon this verdict.

[1] The New York standard form of policy contains a provision for renewal and a limitation on the powers of agents.

"This policy may by a renewal be continued under the original stipulations, in consideration of premium for the renewed term, provided that any increase of hazard must be made known to this company at the time of renewal or this policy shall be void. * * *

"No officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms

·of this ·policy may be the subject of agreement indorsed hereon or added here-to, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions ·or conditions unless such waiver, if any, shall be written upon or attached thereto, nor shall any privilege or permission affecting the insurance under .this policy exist, or be claimed by the insured unless so written or attached."

While the exigencies of business require that a risk may be ac-·cepted by parol, and in certain cases renewed by parol, this necessity ·did not arise in the present case.

Before adoption of the statutory form of contract, an agreement to keep the insurance renewed made directly with the insurance company through its president was held valid. Trustees of First Baptist Church v. Brooklyn Fire Ins. Co., 19 N. Y. 305; Id., 28 N. Y. 153. The authority of a local agent to make a promise to continue the insurance, and to give such a binding agreement eight months before its expiration, with no payment of renewal premium, and regardless ·of any change of the hazard, is the point now in issue.

Plaintiff's recovery, therefore, requires the court to hold that by such an interview the local agent bound this defendant to continue this insurance and to waive premium for the renewal and to keep the building covered whatever should be the nature of its occupation.

Without regard to the limits of agents' powers contained in the New York standard form of contract, such a holding, in the words of Gray, J., "would have to go further than any decision of this court has yet gone, and lay down an impolitic rule which would make the business of insurance transacted through agents all over the country, far away from their principal, altogether too hazardous and uncertain." O'Reilly v. London Assurance, 101 N. Y. 575, 5 N. E. 568.

[2] The indifference of the plaintiff at and after December 14th, the date of the policy's expiration, does not show an intent to renew. Abel v. Phœnix Ins. Co., 47 App. Div. 81, 85, 62 N. Y. Supp. 218.

Where such a promise to renew was alleged to have been made about the time the written policy was issued, it was held that the express terms of the policy limiting agents, by the renewal clause, ex-·cluded the authority to make such an agreement. As was said by Follett, J.:

"The contract sought to be enforced is so unusual that it cannot be pre-sumed to be within the power of an agent, acting under an express and limit-·ed authority, to make. If local agents of insurers possess such power, the companies can never know the extent of their liabilities." Shank v. Glen Falls Fire Ins. Co., 4 App. Div. 516, 522, 40 N. Y. Supp. 14.

See, also, Hambleton v. Home Ins. Co., 6 Biss. 91, Fed. Cas. No. 5,972.

[3] While an oral agreement to renew may be valid though made by an agent, the circumstances must be such as to indicate an apparent authority. Thus such an agreement has been sustained when it was shown to be "the ordinary and usual agreement, which an insurance agent makes on the eve of a policy expiring, that he will renew it." And this period was extended to authorize the agent's agreement made 10 days before the expiration. Squier v. Hanover Fire Ins. Co., 162 N. Y. 552, 554, 57 N. E. 93, 76 Am. St. Rep. 349.

On the other hand, a verbal agreement to renew by a local agent made 10 months before the policy expired could not be presumed to bind the company. Brown v. Dutchess County Mutual Ins. Co., 64 App. Div. 9, 71 N. Y. Supp. 670.

No custom or necessity warrants such an authority by an agent in connection with an indorsement or transfer made during the ordinary life of the policy. Indeed, the Legislature, in adopting the standard form, expressly provides against any such tacit or implied authority.

Judgment for defendant, with costs.