## MASSACHUSETTS BONDING & INS. CO. v. R. E. PARSONS ELECTRIC CO.

### No. 9458.

Circuit Court of Appeals, Eighth Circuit.
Sept. 15, 1932.

David A. Murphy, of Kansas City, Mo. (Harding, Murphy & Tucker, of Kansas City, Mo., on the brief), for appellant.

William S. Hogsett, of Kansas City, Mo. (Chester L. Smith, Ralph E. Murray, and Alvin C. Trippe, all of Kansas City, Mo., on the brief), for appellee.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

Plaintiff (appellee) recovered a verdict and judgment against defendant (appellant) based on an oral renewal of an automobile insurance policy. Plaintiff suffered a loss of $7,387.65 because of an automobile collision in which one of its employees was involved. Plaintiff recovered judgment against defendant for the amount of this loss, with interest, penalty, and attorneys' fees, and the defendant has appealed.

Plaintiff is a distributor at Kansas City, Mo., of electrical refrigeration products. Defendant is an insurance company engaged in the business of writing various kinds of casualty insurance, including automobile liability insurance. On June 10, 1926, the defendant issued to the plaintiff a policy of automobile contingent liability insurance indemnifying it against hazard of possible liability for damages caused by automobiles

owned by and in use of its employees. The policy terminated June 10, 1927. A similar policy was issued by defendant ending June 10, 1928, and a third policy was likewise issued by defendant ending June 10, 1929. All these policies were issued and countersigned by defendant's agent, L. S. Davis. The policies were the ordinary form of automobile liability insurance, except that, instead of covering cars owned by the plaintiff, they covered the cars owned by plaintiff's employees while such employees were engaged in the business of the plaintiff. On June 1, 1929, some ten days before the last-named policy was about to expire, defendant's agent, Davis, with whom plaintiff had transacted all its insurance business with the defendant company covering a period of some six or seven years, called on the president of the plaintiff company, a Mr. Parsons, and called his attention to the fact that the policy was about to expire, and inquired about renewing it. Davis was advised that the plaintiff wanted the policy renewed, and Davis agreed to renew it for an additional year. At this time the agent stated that it would be necessary to obtain certain up-to-date information about the number of employees and the number of cars used by plaintiff's employees, and that, after obtaining such information, he would be able to render plaintiff a statement for the premium. Mr. Parsons told Davis that, when the statement was rendered, the plaintiff would pay it, and referred Davis to Mr. Cronin, cashier and accountant for the plaintiff, who would be able to give Davis all the information regarding the number of employees and the number of cars used. This was the usual manner in which renewals had been handled in previous years; though it apparently was necessary to obtain more detailed and complete information in the renewal of the policy in question than was obtained in the writing of prior coverages.

A day or two after June 10, 1929, Mr. Cronin, who was in charge of plaintiff's insurance policies and records, telephoned Mr. Davis and inquired when the new policy would be delivered. Mr. Davis stated that there was certain information that he had to have with reference to the number and status of plaintiff's employees before he could make delivery of the policy, and that he (Davis) would advise Cronin just what information he wanted so that Cronin could secure the data for him. Davis then stated, according to Cronin's testimony: "He said in the meantime we had nothing to worry about; that Mr. Parsons had arranged with him to renew the policy, he had agreed to do so, and that we were bound."

Thereafter, during June, July, and the first ten days in August, Davis called on Cronin four or five different times requesting information as to the number and status of plaintiff's employees and with reference to the number of automobiles used by employees; and on July 1, 1929, on an occasion when Davis was in plaintiff's office obtaining such information, Mr. Parsons asked him when the new policy would be delivered, and he replied: "Don't you worry about that, you are bound; but what I am trying to get now, today, that is why I am down here today, is to get information from Cronin about the number of employees and the cars and how they are used and so on."

While Davis was getting this information from Cronin, he told Cronin that there would be an advance in the premium on the new policy, to which Cronin replied that plaintiff wanted coverage, and, whatever the rate would be, plaintiff would pay it. On one occasion, when Davis was assembling this data in plaintiff's office, Davis stated to Cronin that there would be a considerable increase in the rate, but it would be governed by the published rate in the manual. It appears that there is a casualty rating organization known as the National Association of Casualty and Surety Underwriters. Defendant is a member of that bureau or association. It publishes a manual of rates to be charged by its members, and the members send a bureau rate manual to their agents for guidance in rating policies. Davis was supplied with this manual by defendant. The published rates on automobile contingent liability insurance appeared in the manual, and the rating rules so published were in force prior to June 10, 1929.

Davis did not indicate to the plaintiff what caused the delay in the issuance of the policy, nor did he account for the necessity of the repeated requests for information from the plaintiff. No contention is made that plaintiff did not co-operate in every way in furnishing full and complete information regarding its employees and their automobiles. Davis on one occasion stated to Cronin that he was sorry to cause so much trouble, but that the branch office was not familiar enough with rates to know just what they did require. Davis did not inform plaintiff what the new rate would be, and the new rate had not been determined before the accident hereinafter referred to.

On August 16, 1929, one of plaintiff's salesmen, driving his own car on plaintiff's business, collided with an automobile occupied by three persons. Plaintiff gave immediate notice of the accident to the defendant through Davis. Davis in turn transmitted this notice to defendant's branch office. Suits were commenced by occupants of the other car on account of injuries received in the accident, and defendant denied liability and refused to defend. The suits were thereafter settled by plaintiff, and, after the liability was settled, defendant refused to reimburse the plaintiff for its loss, claiming there was no enforceable oral agreement of renewal and that Davis was without authority to make any binding agreement.

This suit was commenced by plaintiff on an oral contract of insurance. At the close of all the testimony, defendant moved for a directed verdict in its favor without stating the grounds upon which its motion was based. The motion was denied. The jury returned a verdict in favor of plaintiff for the amount of plaintiff's loss, including statutory penalty and attorneys' fees, provided by the statutes of Missouri for vexatious refusal to pay the loss. From the judgment, defendant has appealed, urging: (1) That the court erred in overruling its motion for directed verdict; (2) that the court erred in charging the jury relative to the authority of the agent, Davis; (3) that the court erred in charging the jury with reference to the general custom among insurance agents in Kansas City; (4) that the court erred in submitting to the jury the question of vexatious refusal to pay; and (5), (6), (7), and (8) that the court erred in excluding certain testimony offered by the defendant.

 The contention that the court erred in denying defendant's motion for a directed verdict may be summarily disposed of. The ruling of the court cannot be here reviewed because the motion failed to specify any grounds upon which it is based. Mansfield Hardwood Lumber Co. v. Horton (C. C. A. 8) 32 F.(2d) 851; Falvey v. Coats (C. C. A. 8) 47 F.(2d) 856; Standard Accident Ins. Co. v. Rossi (C. C. A. 8) 52 F.(2d) 547; William Bros., Inc., v. Heinemann (C. C. A. 8) 51 F.(2d) 1049; Public Utilities Corporation v. McNaughton (C. C. A. 8) 39 F.(2d) 7; Denver Live Stock Commission Co. v. Lee (C. C. A. 8) 20 F.(2d) 531. But, regardless of the sufficiency of the motion made for a directed verdict, we are satisfied that the court was clearly correct in submitting the case to the jury. The sufficiency of the evidence to support the judgment is also substantially raised under other assignments of error.

It is urged that the court erred in charging the jury that, if they believed and found "from the evidence that on or about June 1, 1929, defendant, through its agent, L. S. Davis, solicited plaintiff, R. E. Parsons Electric Company, to renew the aforesaid policy, and that plaintiff and defendant then and there agreed that said policy would be renewed, effective for one year from June 10, 1929, and that on or about June 10, 1929, plaintiff notified defendant that the renewal policy had not yet been received, and defendant through its said agent, L. S. Davis, stated to plaintiff that there would be some delay in delivering the policy, but that the risk was bound and plaintiff was covered during the said renewal period under the same general terms as in the aforesaid policy expiring June 10, 1929; that if you further find that plaintiff and defendant at said time understood and agreed that upon presentation by defendant to plaintiff of a bill therefor, plaintiff would pay the premium to defendant for said renewal, at defendant's customary rate, and that the amount of said premium would be calculated and determined by defendant after an investigation and ascertainment by defendant of certain information with respect to the total number of plaintiff's employees, and with respect to the percentage of such employees using their own automobiles on plaintiff's business; and if you further find that defendant extended credit to plaintiff for the payment of premium for said renewal, and that ever since said agreement plaintiff has been and is now ready, able and willing to pay defendant said premium, upon presentation of a bill therefor by defendant, and that plaintiff within a reasonable time offered to pay said premium to defendant," and if they found the other facts hypothesized in the charge, about which there was no controversy, their verdict should be for the plaintiff. The exception to this portion of the court's charge goes to the question of the sufficiency of the evidence, and presumably challenges the authority of Davis to bind defendant by an oral contract of insurance.

 Davis was unquestionably the duly authorized agent of defendant. He had been defendant's agent for some six or seven years, during all of which time, plaintiff's dealings with the defendant were transacted and conducted through Davis, and Davis alone. Davis' written contract with the defendant required him to "secure for the company the

greatest volume of desirable business in the territory assigned his agency." He was authorized to issue policies, renewals, and binders. Upon the form of letterhead used by the defendant appeared the inscription "L. S. Davis & Company, Agent."

Some thirty policies were issued to the plaintiff by the defendant, all of which were countersigned by Davis. He was the only agent whose name appeared on any of the policies issued by defendant to plaintiff. Mr. Parsons testified that, of the policies so issued, at least six were issued and delivered at intervals ranging from one day to seven days, thirteen days, and even six weeks after the policies were effective. It is uncontroverted that the plaintiff acted in the utmost good faith. Defendant's agent from time to time assured it that the risk was bound, and, relying and depending upon the assurance so made, the plaintiff procured no other insurance during this period to cover the risk occasioned by the use of its employees' automobiles in its business. It must be apparent that defendant is charged with knowledge of the course of business transacted between plaintiff and its agent during the six or seven years referred to. Consequently there can be but little question that, under this state of facts, Davis had authority to make an oral contract to renew the insurance. In discussing the authority of an agent, Cooley's Briefs on Insurance, 345, states as follows: "Though the powers of an agent may be limited by definite restrictions on his authority and by the nature of his agency, the determination of his powers and consequently the rights of the insured must rest in the first instance on the general principle that the powers of an agent are prima facie coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. The real question is not what power the agent has, but what power the company has held him out as having." See, also, the following cases: Potter v. Phenix Ins. Co. (C. C. 8) 63 F. 382; Foursha v. American Ins. Co., 224 Mo. App. 1071, 34 S.W.(2d) 552; Union Mutual Ins. Co. v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617; National Liberty Ins. Co. v. Milligan (C. C. A. 9) 10 F.(2d) 483; Shelby v. Conn. Fire Ins. Co., 218 Mo. App. 84, 262 S. W. 686; Ætna Ins. Co. of Hartford, Conn., v. Licking Valley Milling Co. (C. C. A. 6) 19 F.(2d) 177.

■ An insurance policy may be renewed by parol. There is no legal or statutory provision in the instant case that requires written evidence of the renewal. In Ætna Ins. Co. of Hartford, Conn., v. Licking Valley Milling Co., supra, on page 180, of 19 F.(2d) the court stated: "Unless forbidden by statute or other positive regulation, it is not necessary to the validity of a contract to insure that it be in writing. Hartford Fire Ins. Co. v. Tatum (C. C. A. 5) 5 F.(2d) 169, 171; Fireman's Fund Ins. Co. v. Norwood (C. C. A. 8) 69 F. 71, 75, and cases cited; Lee [Blakemore, Inc.] v. Lewelling (C. C. A. 8) 281 F. 952, 960." See, also, Relief Fire Ins. Co. v. Shaw, 94 U. S. 574, 24 L. Ed. 291; Quinn-Shepherdson Co. v. U. S. Fidelity & Guaranty Co., 142 Minn. 428, 172 N. W. 693, and cases cited.

Defendant frankly admits in this court that Davis had apparent authority to make an oral contract of insurance. On page 13 of the reply brief, counsel say: "That Davis had apparent authority to make an oral contract of insurance we concede. Therefore, we have no quarrel with most of the decisions cited by appellee on this point. What we contend is that his apparent authority only extended to the making of an oral contract for temporary purposes, for a short period of time or from one day to a week at the outside."

This admission reduces the defense to the question of the validity of the oral contract entered into and the authority of Davis to make an oral contract of insurance for the period in question.

■ It is, of course, elementary that the court cannot make a contract for the parties. In order to have an enforceable contract of insurance, there must be a meeting of the minds of the parties on the essential elements of the contract. But, in the instant case, the parties agreed to renew a policy that was then in full force and effect. The proof of an oral contract of original insurance is not involved. It will be presumed, unless a contrary intention appears, that the parties intended to adopt in the renewal policy the terms and conditions of the expiring policy. The following note is to be found in 15 A. L. R., page 1011: "It is generally held that agreements to renew need not be as definite as to terms as an agreement to issue a policy, since the agreement will be presumed to have reference to the terms of the existing policy, and these agreements have been upheld where there was no specific agreement as to terms. Commercial F. Ins. Co. v. Morris (1894) 105 Ala. 498, 18 So. 34; Baldwin v. Phœnix Ins. Co. (1889) 107 Ky. 356, 92 Am. St. Rep. 362, 54 S. W. 13; Georgia Home Ins. Co. v. Kelley (Ky. 1908) 113 S. W. 882; Mallette

v. British-American Assur. Co. (1900) 91 Md. 471, 46 A. 1005; Wiebeler v. Milwaukee Mechanics' Mut. Ins. Co. (1883) 30 Minn. 464, 16 N. W. 363; Abel v. Phœnix Ins. Co. (1900) 47 App. Div. 81, 62 N. Y. S. 218."

Parsons testified that the type of insurance agreed upon was the renewal of the contingent liability policy that had been in existence from 1928 to 1929. It was to be renewed for a year, and, whatever the amount of the premium, plaintiff agreed to pay it. The nature of the coverage was definite and certain, and, while the testimony does not indicate in so many words that Parsons agreed to pay the premium on the renewal policy at the customary rate, it is evident that the parties had in mind that the premium should be determined from the number of employees using their cars in plaintiff's business. Davis evidently understood that plaintiff had agreed to pay the customary and usual rate of premium depending upon the number of employees using cars, and the other data he was obtaining from plaintiff's books. Davis assured plaintiff from time to time that the coverage was complete. Furthermore, it must be borne in mind that the premium originally paid by the insured on such a policy is merely tentative. The earned premium is ascertained at the end of the policy year. Necessarily, then, the premium to be paid by the plaintiff was to be merely an advance premium, subject to change at the end of the policy year, depending upon the actual number of employees using their cars in plaintiff's business.

■■■■■ Plaintiff's testimony regarding the renewal contract and the negotiations with Davis was not denied. It appears that Davis was present at the trial of this case, but was not called to the stand. The trial court apparently was of the opinion that, if the jury believed plaintiff's testimony, a recovery should be had. The case was submitted to the jury on the theory that plaintiff's testimony established the existence of a completed contract of insurance. There is, of course, a difference between an oral contract to renew and an oral contract of insurance. However, plaintiff is not limited in its proof of the oral contract of insurance to the conversation between Davis and Parsons that took place on or about June 1, 1929. The complaint is sufficiently broad to admit subsequent conversations and negotiations between the parties. Its allegations are not confined to June 1, 1929. During the period subsequent to June 1st, and for several weeks thereafter, something was being done by both parties relative to the contemplated insurance contract. The entire negotiations between the parties justify a finding that a contract of insurance in præsenti had been agreed upon. It might be observed that, if there is any question about the sufficiency of the evidence to establish a renewed contract of insurance for a year, the evidence indisputably proved that the defendant, through its agent, agreed to cover the risk incident to the use of employees' cars in plaintiff's business on the same terms and conditions as the previous policy until a written renewed policy was formally issued. No other insurance was procured on the assurance of defendant's agent that plaintiff was fully protected. There was ample consideration to sustain such an agreement. Nord-Deutsche Ins. Co. v. Hart (C. C. A.) 230 F. 809. The only objection taken to the portion of the charge complained of is as follows: "That there is no evidence sustaining that part of the charge and for the further reason that it ignores the defense that under the evidence in this case that Mr. Davis had no apparent authority to make any oral contract for the defendant." There, of course, was ample evidence to sustain this portion of the court's charge. The testimony was undisputed. We are clear that, in view of the uncontradicted evidence, no error can be predicated on the objections directed by the defendant to the portion of the court's charge complained of.

■■■■■ The defendant contends that, if all the other elements of the contract of renewal were in existence according to plaintiff's testimony, the premium had not been agreed upon between the parties with sufficient certainty. It produced evidence to the effect that the so-called contingent liability policy had been abandoned or discontinued by it in April, 1929. At the time the alleged renewal was made, defendant contends that the only form of policy covering such a risk was a so-called nonownership type of insurance. The rates under a nonownership form of policy were higher than those which were previously charged under the contingent liability policy, and, according to the defendant's proof, the only insurance manual in force at the time the renewal was made, contained a method of rating a nonownership policy, and not a contingent liability policy. In other words, defendant's proof indicated that in April, 1929, it had abandoned the writing of the contingent liability policy and had substituted another type in covering the risks incident to an employer being liable for injuries caused by cars owned by its employees. The exact

difference between the two types of policies does not appear, but defendant's manager testified that the essence of the coverage is the same.

The fact that the type of policy written by the defendant had been changed prior to June, 1929, does not sustain defendant's contention that the premium was not agreed upon between the parties with reasonable certainty. Davis had provided the plaintiff with defendant's contingent liability policy for some years. The policy which expired on June 10, 1929, had been renewed. The manual prescribing the rate for such a policy had been furnished to Davis by the defendant. It is obvious that the parties intended that the premium should be determined as it had been ascertained in the past; that is, according to the number of employees using their cars in plaintiff's business. A change in the name of the policy covering such a risk did not necessarily change the method by which the premium should be determined, and as to the plaintiff, it is immaterial that defendant had abandoned the contingent liability form. It is admitted that plaintiff had no knowledge concerning any change in the style or form of policies covering this class of risk. It was plaintiff's understanding that it obtained a renewal of the policy then in existence, and no information was given to plaintiff by Davis, or by any one else, that there would be any change in the renewed policy. Defendant cannot now be heard to say that its agent, with apparent authority, contracted for a policy in its behalf that it no longer wrote. The premium was readily ascertainable from the manual covering contingent liability policies. It was this type of policy that the parties agreed to renew.

It was the defendant that commissioned Davis as its agent and instructed him to "secure for the company the greatest volume of desirable business in the territory assigned his agency." For some years defendant had been aware that Davis made oral renewals of its policies with the plaintiff. Several of the policies so renewed were delivered long after the coverage became effective. Plaintiff always paid the premiums without any objection, and no question was ever raised by the defendant as to plaintiff's credit standing, and it freely permitted the plaintiff credit from thirty to sixty days within which to pay premiums. Under the undisputed facts of this case, no court should lend its aid to the defendant in repudiating the renewal that was made by an agent who was clothed with apparent authority to do that which defendant now refuses to recognize. Courts should not endeavor to spell out a completed enforceable contract merely because of the equities of the situation; but neither should the court permit a party to escape the oral contracts of its agents simply because all the niceties and legal exactness of a written contract were not provided for.

The language found in Eames v. Home Insurance Co., 94 U. S. 621, 629, 24 L. Ed. 298, indicates the liberal attitude of courts in construing the rights of parties under oral contracts of insurance: "If no preliminary contract would be valid unless it specified minutely the terms to be contained in the policy to be issued, no such contract could ever be made or would ever be of any use. The very reason for sustaining such contracts is, that the parties may have the benefit of them during that incipient period when the papers are being perfected and transmitted. It is sufficient if one party proposes to be insured, and the other party agrees to insure, and the subject, the period, the amount, and the rate of insurance is ascertained or understood, and the premium paid if demanded. It will be presumed that they contemplate such form of policy, containing such conditions and limitations as are usual in such cases, or have been used before between the parties. This is the sense and reason of the thing, and any contrary requirement should be expressly notified to the party to be affected by it."

In Ætna Ins. Co. of Hartford, Conn., v. Licking Valley Milling Co., supra, on page 180, of 19 F.(2d) the court stated: "While the broad general rule is that a contract to insure is invalid, unless its elements are agreed upon expressly or by implication, or means are provided for their determination, the controlling authorities do not imperatively require express proof of definite agreement thereon. The better rule is that the minds of the parties must be shown to have in some way met in regard to those subjects. Eames v. Home Insurance Co., 94 U. S. 621, 626, 629, 24 L. Ed. 298, 630."

In Shelby v. Connecticut Fire Insurance Co., supra, on pages 93, 94 of 218 Mo. App., 262 S. W. 686, 690, the court stated: "Manifestly, therefore, the record discloses ample testimony (and that, too, of a clear, cogent, and unequivocal character) to support the contention that in the conversation had between Mrs. Shelby and Pollman about November 1st a contract of insurance was tentatively arranged for, but which did not become a present existing contract of insurance until December 4 or 5, 1919, when it was

effectuated in their conversation over the telephone ending with Pollman telling her that the insurance was in effect 'at this hour.' All of their previous conversation and arrangements culminated in the agreement made over the telephone at this time, and it contained all the elements of a complete oral contract of insurance. The subject-matter was in existence and at the place where it was to be insured. The risk insured against was specified, the precise amount of indemnity fixed, the duration of the risk named, and the premium was susceptible of definite ascertainment and existed as a valid charge against Mrs. Shelby. Nothing was left open for future adjustment, and the minds of the parties had fully met. Worth v. German Ins. Co., 64 Mo. App. 583, 587; King v. Phœnix Ins. Co., 195 Mo. 290, 92 S. W. 892, 113 Am. St. Rep. 678, 6 Ann. Cas. 618; Baile v. St. Joseph, etc., Ins. Co., 73 Mo. 371."

In Robinson v. Franklin Fire Ins. Co. of Philadelphia, 225 Mo. App. 960, 35 S.W.(2d) 635, 637, the court stated: "Plaintiff's evidence tends to show that the contract on his part was made by Miss Hecht and on defendant's part by Miss Blackmore; that all of the necessary elements of an oral contract of insurance were presented, that is to say, there is substantial evidence showing the location and kind of property to be insured, the character of the risk, the amount, $3,000, and duration, a period of three years, and that defendant 'bound' the insurance. There is no showing that the amount of the premium was mentioned, but there was a showing that the amount of the premium is fixed by law or the rules of the insurance department, and was, therefore, not a matter to be specially agreed upon by the parties. It is clear it was the intention of the parties to contract for insurance for a period of three years upon plaintiff's household goods and that the agency represented by Miss Hecht would pay the premium."

In Murphy v. Great American Ins. Co., 221 Mo. App. 727, 730, 285 S. W. 772, 773, the court stated: "There is no merit in the contention that the demurrer to the evidence should have been sustained because the evidence does not show the existence of all the elements necessary for an oral contract of insurance. There are five elements necessary to constitute such a contract: First, the subject-matter; second, the risk insured against; third, the amount; fourth, the duration of the risk; and fifth, the premium. It is not essential that all of these elements of the contract be expressly agreed upon if the intention of the parties to the contract in these particulars can be gathered from the circumstances of the case. An oral contract of insurance is binding, although the premium is not to be paid at the time of its consummation if credit is given. 1 Cooley's Briefs on the Law of Insurance, pp. 392, 393; 1 May on Insurance, p. 46; Hartford Fire Ins. Co. v. Trimble, 117 Ky. 583, 78 S. W. 462, 464. The existence of every one of these five elements was established by the evidence in this case."

In 26 Corpus Juris, 49, it is said: "It is not necessary, however, that all the details of the contract that are finally to be expressed in the policy should be specified; it will be sufficient if the intention of the parties to the contract in these particulars can be gathered from the circumstances of the case. * * * There must be a consideration for the executory agreement to insure, but an agreement, even implied, to pay the usual premium, will be sufficient to constitute a consideration."

Several witnesses were called by the defendant and offered testimony to the effect that a custom existed in Kansas City and vicinity whereby oral binders were made for a very short period of time before a written binder or policy replaced it. At least one witness stated that there was a general custom to issue the policy within twenty-four hours after an oral agreement to renew. It is defendant's position that Davis' apparent authority to make an oral contract of renewal is limited by the prevailing custom in that regard in the vicinity where the contract was made, and the defendant urges that the court erred in charging the jury that plaintiff was entitled to rely upon its customary method of dealing with the defendant if such private custom differed from a general custom that existed among other insurance agents. We find no error in this portion of the court's charge. There is considerable doubt in our minds that the testimony given by the witnesses established a custom as that term is contemplated by the decisions, but, regardless of the weight of such testimony, the general custom that may have existed could not impair plaintiff's rights when the evidence clearly established a course of dealing between plaintiff and defendant through its agent, Davis, that was entirely contrary to the custom testified to. When it appears from the evidence that these parties, for a period of some six or seven years, were in the habit of orally renewing contracts to insure, and that the policies were delivered at periods of time ranging from one week to six weeks after the

policies became effective, it must be quite evident that any general custom cannot affect a long-continued private custom that was in existence between these parties.

■ On the issue of vexatious refusal to pay the loss, the court fairly and fully submitted that question to the jury. It was definitely shown that the defendant had all the facts before it, including an affidavit of Davis showing that he had agreed to renew the policy and had assured the plaintiff that it was protected. All this information was in defendant's possession before suit was commenced. The attempted repudiation of Davis' authority and the denial of any agreement to renew in face of the affidavit in its possession, justified the jury in finding for the plaintiff on this issue. Furthermore, Davis was in court and was never called as a witness by the defendant, and, in view of all these circumstances, the question as to whether or not defendant's refusal to pay was willful and without reasonable cause was a fair matter for the jury to determine. We are not disposed to disturb their finding. Buffalo Ins. Co. v. Bommarito (C. C. A.) 42 F.(2d) 53, 56–57, 70 A. L. R. 1211; People of Sioux County, Neb., v. National Surety Co., 276 U. S. 238, 243, 48 S. Ct. 239, 72 L. Ed. 547; New York Underwriters Fire Ins. Co. v. Malham & Co. (8th C. C. A.) 25 F.(2d) 415, 422; Non-Royalty Shoe Co. v. Assurance Co., 277 Mo. 399, 422, 210 S. W. 37; Barber v. Ins. Co., 269 Mo. 21, 42, 187 S. W. 867; Barber v. Ins. Co., 279 Mo. 316, 332, 214 S. W. 207, 12 A. L. R. 758; Novosel v. Mid-West Life Ins. Co. (Mo. App.) 276 S. W. 87, 89; Hicks v. Metropolitan Life Ins. Co., 196 Mo. App. 162, 190 S. W. 661; Coscarella v. Metropolitan Life Ins. Co., 175 Mo. App. 130, 140, 157 S. W. 873; Stix v. Indemnity Co., 175 Mo. App. 171, 180, 157 S. W. 870.

■ Defendant complains of the exclusion by the court of certain proffered testimony indicating that the number of employees using their cars in plaintiff's business would, under the rules of the National Rating Bureau, require a special rating in order to determine the premium on plaintiff's insurance for the year 1929–30. It is defendant's contention that the manual in effect prior to June 10, 1929, which covered the contingent liability policies, provided that every risk involving less than one hundred employees where 10 per cent. or more used automobiles, and every risk involving one hundred or more employees, regardless of the number using cars, should be submitted to the company for rating. Defendant contends that the bureau,

under the rules, would arbitrarily determine the excess premium that should be paid on this policy in view of the number of employees using their cars in performance of their duties, and it is urged that, on account of the indefiniteness and uncertainty of the bureau's conclusion as to the amount of the premium that could be charged on such a policy, the contract was void and unenforceable. We are clear that the court correctly sustained the objection to this offer of proof. The rate was to be established by the manual. The premium on previous policies had been so determined. The parties understood that plaintiff was obliged to pay the earned premium at the end of the year according to the actual number of employees using cars throughout the year. The mere fact that some bureau might be required to arbitrarily assess an excess premium does not present any insurmountable difficulty in enforcing plaintiff's rights under this oral contract. The means by which the premium should be determined was agreed upon. That is sufficient.

■ There was no error in excluding the testimony of C. B. Thomas and Hazel Woody, nor in refusing to admit certain correspondence between the branch office and Davis. The latter was clearly inadmissible, and consisted of mere hearsay evidence. Plaintiff was not aware of any transactions or correspondence between Davis and the branch office. For a period of some years, defendant had permitted Davis to continue a course of dealing with plaintiff that fully indicated authority in Davis to make the contract sued upon herein. Conversations between Davis and officers in charge of the branch office, uncommunicated and unknown to the plaintiff, were clearly inadmissible. Secret limitations on the authority of an agent are not competent evidence if contrary to the authority with which the principal has clothed the agent through long and extensive dealings with the insured. See Cooley's Briefs on Insurance, 345, supra.

■ The delay in the issuance of a written policy was probably inexcusable. No blame can be attached to the plaintiff, however. It was the dilatory conduct or inefficiency of defendant's agent that was responsible. Defendant has no right to complain of the delay. Shelby v. Connecticut Fire Ins. Co., supra. Plaintiff was ready, willing, and able to pay the premium at any time the bill was presented. Its conduct throughout is above criticism. The exigencies of modern business require and justify reliance on oral agreements of insurance entered into by

agents acting with apparent authority. It hardly comes with good grace for the defendant to attempt to disclaim responsibility for this contract, which was made in its behalf by one who had for years been its sole representative in dealing with the insured. In the past, the defendant had always charged the plaintiff for insurance for a term beginning with the date of the policy, although the policy was delivered long after the insurance became effective. Its practice in dating its policies back indicates an intention to protect its customers from the time the oral agreement was entered into. Manifestly it would be unfair to deny the plaintiff the protection of coverage under an oral contract of insurance, when it is apparent from the dealings of the parties that the only difference between this renewal and the prior renewals is that a loss occurred in the interim between the oral renewal and the formal issuance of the policy. Plaintiff made no complaint about paying the premium from the date of the oral renewal, and defendant should not now be permitted to escape its responsibility for plaintiff's loss.

We discover no reversible errors in the record, and, in accordance with the views expressed herein, the judgment of the trial court is affirmed.